MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 182
Docket:        And-16-146
Submitted
  On Briefs:   July 19, 2017
Decided:       August 22, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, and HJELM, JJ.
Majority:      SAUFLEY, C.J., and MEAD and HJELM, JJ.
Concurrence/
  Dissent:     ALEXANDER and JABAR, JJ.

IN RE EVELYN A. et al.


SAUFLEY, C.J.

[¶1]  Evelyn and Elijah A. are twins born in 2013.  Because the twins'
parents had been convicted, in 2005, of the assault and manslaughter of their
twenty-one-month-old son, Nathaniel, the twins went from the hospital into
foster care.  They have remained with the same foster parents since their
birth, and although Evelyn has cerebral palsy that affects her ability to walk,
both children are otherwise healthy.  The parents have never accepted the
jury's verdict finding the mother guilty of manslaughter or the separate
verdict finding the father guilty of assault.  They have testified that they
believe that the scientific and medical communities have been wrong about
the cause of Nathaniel's death and the system of justice has failed them.

[¶2]  The matter comes before us in an unusual procedural posture. After a trial on a petition to terminate parental rights brought by the Department of Health and Human Services, the District Court (Lewiston, *Dow, J.*) terminated both parents' parental rights to the twins.  The parents filed notices of appeal and moved for relief from the judgment of termination and months later moved for relief from the court's initial finding of jeopardy (*Field, J.*), all based on claims of ineffective assistance of counsel.  After a hearing, the court concluded that trial counsel had been ineffective at the jeopardy stage and declined to make findings regarding counsel's effectiveness in the termination proceeding.  Based on the finding regarding the jeopardy proceeding, the court vacated the termination order and required the Department to negotiate a plan to provide reunification services to the parents.  The Department appeals from the court's judgment vacating the termination order.

[¶3]  We conclude that the court erred in addressing the parents' untimely raised allegations that they had received ineffective assistance of counsel at the jeopardy stage, in ordering further reunification efforts, and in declining to adjudicate the claim of ineffective assistance of counsel regarding the termination proceeding.  Accordingly, we vacate the court's judgment

granting the parents' motion for relief as it affects the original jeopardy determination. We also clarify the process for applying what the Legislature has called a "rebuttable presumption," 22 M.R.S. § 4055(1-A) (2016),[1] and remand to allow the court to determine whether to terminate the parents' parental rights by applying section 4055(1-A) in a manner that is consistent with due process. On remand, the court must also, as necessary, issue findings and determinations regarding the parents' claim of ineffective assistance of counsel at the termination hearing.

## I. BACKGROUND

[¶4] The following facts are drawn from the court's findings, all of which are supported by competent evidence in the record, and from the lengthy procedural record. *See In re Gabriel W.*, 2017 ME 133, ¶ 3, --- A.3d ---. Evelyn and Elijah are twins born prematurely in October 2013. Six days after they were born, the Department petitioned for a preliminary protection order on the ground that the twins' parents had been convicted of crimes perpetrated against their first child, Nathaniel, who died due to the mother's abuse within the first year after they had adopted him. Specifically, in 2005,

---

[1] The Legislature's recent amendment to 22 M.R.S. § 4055(1-A) does not affect the analysis of the law in this case. *See* P.L. 2015, ch. 360, § 4 (effective Oct. 15, 2015) (codified at 22 M.R.S. § 4055(1-A)(B)(11) (2016)).

4

the mother had been convicted of manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2016), *see State v. Allen*, 2006 ME 20, ¶ 1, 892 A.2d 447 (affirming conviction), and the father had been convicted of assault of a person under the age of six (Class C), 17-A M.R.S. § 207(1)(B) (2016), *see State v. Allen*, 2006 ME 21, ¶ 1, 892 A.2d 456 (affirming conviction).[2]

[¶5]  The court (*Oram, J.*) signed an order of preliminary protection on October 9, 2013, placing the twins in the custody of the Department.  When the children were discharged from the neonatal intensive care unit in mid-November, they were placed in a foster home, where they have resided ever since.

[¶6]  The parents waived the right to a summary preliminary hearing. The court (*Beliveau, J.*) held a five-day contested jeopardy hearing on February 25 and 26, March 14, April 30, and May 9, 2014.[3]  *See* 22 M.R.S. § 4035(1) (2016).  The parents were represented by counsel throughout the proceeding.  At that hearing, the court heard specific evidence regarding the convictions related to Nathaniel's death.  Notwithstanding the convictions, the

---

[2]  Because the statutes pursuant to which the parents were convicted have not been amended since their convictions, we cite the current codification of those statutes.

[3]  The court was apparently unable to hear the matter in a single week and had to schedule this detailed hearing over four months because of the absence of block scheduling.  That should not arise as a problem in similar cases in the future.

court allowed the parents to offer evidence to challenge the cause of Nathaniel's death.  The Department presented evidence of the head and neck injuries suffered by Nathaniel while he was in his mother's care; the resulting inter-cranial bleeding that was the immediate cause of death; the medical opinion of the cause of death that had been presented to the jury—violent and repeated shaking of the child; and the parents' frustration with Nathaniel's behavior that preceded his injuries.  The parents both testified.  They did not accept responsibility for Nathaniel's death, and they expressed their belief that his death was caused by some other undiagnosed medical problem, possibly due to his immunizations or a seizure or metabolic disorder.

[¶7]  The court entered an order on June 2, 2014, finding the children to be in jeopardy.  *See* 22 M.R.S. § 4035(2) (2016).  Although the Department had not sought a finding of an aggravating factor, the court determined that an aggravating factor existed as to each parent because of the mother's criminal conviction of manslaughter, *see* 22 M.R.S. § 4002(1-B)(B)(3) (2016); the father's felony conviction of assault on a child under the age of six resulting in serious bodily injury, *see* 22 M.R.S. § 4002(1-B)(B)(5) (2016); and the father's subjection of Nathaniel to "treatment that is heinous or abhorrent to society,"

6

22 M.R.S. § 4002(1-B)(A) (2016),[4] by beating the child with a wooden spoon. The court specifically found that the mother is "unable to show remorse for her actions" and "unable to take responsibility for her actions."

[¶8]  The court found that, since her conviction, the mother

> has not once admitted to any wrongdoing.  She, along with [the father], maintains that Nathaniel's death was caused by an untreated medical condition.  She does admit that her actions on that night could have made Nathaniel's medical condition worse, thereby leading to his death, but she still feels she has committed no wrong.  In counseling she . . . focused more on her anger towards the legal system than her grief for the loss of Nathaniel. [The mother] was Nathaniel's caregiver on the night he died, and she has yet to provide a consistent and plausible story for Nathaniel's death.

[¶9]  The court ordered the Department to cease reunification efforts with the parents based on these aggravating factors.  *See* 22 M.R.S. §§ 4036(1)(G-2), 4041(2)(A-2)(1) (2016).  The parents appealed from the jeopardy order.  *See In re E.A.*, 2015 ME 37, ¶ 6, 114 A.3d 207.  We affirmed the court's order as to both parents.  *See id.* ¶ 1.

[¶10]  The parents did not request any services to alleviate parenting deficits, and they continued to maintain that they presented no risk to the

---

[4] Although 22 M.R.S. § 4002(1-B)(A) was recently amended to include additional specific crimes giving rise to an aggravating factor, the language that applies here has not changed, and we cite the current statute.  *See* P.L. 2015, ch. 360, § 3 (effective Oct. 15, 2015) (codified at 22 M.R.S. § 4002(1-B)(A)(1) (2016)).

twins. On July 1, 2014, the Department petitioned for termination of the parents' parental rights. More than a year later, the court (*Dow, J.*) held a hearing on October 29 and 30, 2015, and entered a judgment terminating both parents' parental rights to the children on February 23, 2016. The court considered the evidence that the parents offered to rebut the statutory presumption that they are "unwilling or unable to protect the child[ren] from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child[ren]'s needs"—a presumption the court found arose from the mother's conviction and the father's conduct toward their first child that was "heinous or abhorrent to society." 22 M.R.S. § 4055(1-A)(A), (B)(3).[5] The court found that the parents "ha[d] the burden to rebut the presumption of parental unfitness" and that they "fail[ed] to meet that burden." The court found, by clear and convincing evidence, that the parents were unwilling or unable to protect the children from jeopardy and that those circumstances were unlikely to change within a time reasonably calculated to meet the children's needs, and it determined that the children's

---

[5] Unlike the jeopardy statute, the termination statute does not include felony assault resulting in serious bodily injury as a fact that gives rise to the "presumption." *Compare* 22 M.R.S. §§ 4002(1-B)(B)(5), 4036(1)(G-2) (2016), *with* 22 M.R.S. § 4055(1-A)(B) (2016).

best interests would be served by termination of the parents' parental rights. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i) (2016).

[¶11] The parents timely appealed from the judgment, and each moved for an enlargement of time to file a motion for relief from judgment. *See* M.R. Civ. P. 60(b). The court granted the parents' motions for enlargement of time, ultimately allowing the parents until June 16, 2016, almost four months following the entry of the termination order, to file any Rule 60(b) motions specifically related to allegations of ineffective assistance of counsel. With respect to the parents' pending appeal, we directed the Clerk of the Law Court "to withdraw the briefing schedule if, and only if, either parent files a motion in the District Court pursuant to M.R. Civ. P. 60(b) on or before June 16, 2016."

[¶12] On June 15, 2016, the parents filed a joint motion for relief from the judgment terminating their parental rights. They alleged that they received ineffective assistance of counsel at the termination hearing, and they attached affidavits in support of their motion. For reasons that are not clear on the record, no immediate hearing was held on the motion for relief from judgment. Five months later, on November 10, 2016, the parents moved to amend their motion to add allegations of ineffective assistance at the jeopardy stage. About one month later, the court held a hearing on the Rule 60(b)

motions. On February 17, 2017, the court entered a judgment granting the motion to amend the motion for relief from judgment and finding ineffective assistance *at the jeopardy stage* by both parents' counsel primarily due to what it concluded was insufficient advice regarding the parents' decision whether to consent to a finding of jeopardy to reduce their exposure to a potential finding of an aggravating factor and a cease reunification order. *See* 22 M.R.S. §§ 4002(1-B)(A), (B)(3), (5), 4036(1)(G-2), 4041(2)(A-2)(1). The court found that counsel's inaccurate advice affected the parents' decisions to reject an agreement offered by the Department that, if accepted by the court, would not have included an aggravating factor. Although the parents had not sought any specific services other than increased visitation, the court ordered the Department to offer the same agreement to the parties and to negotiate with the parents and the guardian ad litem, in good faith, to create "a reunification plan likely to serve the children's best interest."

[¶13] The Department filed a notice of appeal from the court's decision and moved for reconsideration and for findings of fact. The court granted the motion for findings of fact in part, clarifying that the jeopardy order was not vacated: "Jeopardy has not been alleviated. The jeopardy order was properly entered on the trial evidence, appealed to and affirmed by the Law Court."

Nonetheless, the court also found that "[t]he result of the remedy ordered by the Court in the February 17 judgment would likely be an amended jeopardy order." The jeopardy order was therefore to remain in effect until replaced, but the termination judgment was vacated to allow for additional proceedings. We now consider the appeals brought by the parents and the Department.

## II. DISCUSSION

### A. Final Judgment Rule

[¶14] Preliminarily, we note that the matter before us does not, as it stands, finally dispose of the case. Although we would ordinarily dismiss an appeal from an interlocutory decision, we apply the death knell exception to the final judgment rule in this matter. *See In re Bailey M.*, 2002 ME 12, ¶ 7, 788 A.2d 590. "That exception allows a party to appeal an interlocutory order immediately if substantial rights of that party will be irreparably lost if review is delayed until final judgment." *Id.* (alteration omitted) (quotation marks omitted). Here, because of the statutorily mandated priority given to establishing permanency in child protection proceedings, 22 M.R.S. § 4003(4) (2016), the previous delay in reaching the claim of ineffectiveness of counsel, and the number of years that these children have been in foster care—fully three and a half years now—the resolution of the issues in this appeal must be

given priority to prevent extensive further proceedings that would have an "imminent, concrete, and irreparable" effect on the lives of the children. *In re Bailey M.*, 2002 ME 12, ¶ 7, 788 A.2d 590 (quotation marks omitted).

B.     Timeliness of Motion to Amend Motion for Relief from Judgment

[¶15]  The Department first argues that the court abused its discretion in granting the parents' motion to amend their motion for relief from the judgment terminating their parental rights because the motion to amend was filed *five months* after the deadline established by the trial court and by us, and the parents did not seek leave from us to amend their motion.  *See* M.R. App. P. 3(b).  We have been very clear in describing the limited timeframe for raising an ineffective assistance claim after the entry of a judgment terminating a parent's parental rights: "The motion for relief from judgment should be filed no later than twenty-one days after the expiration of the period for appealing the underlying judgment." *In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718.  The termination judgment, dated February 22, 2016, was entered on the docket the following day, February 23, 2016.  Thus, the deadline for filing a motion was April 5, 2016—twenty-one days following the expiration of the twenty-one-day appeal period.  *See* M.R. App. P. 2(b)(3).

12

[¶16]   Despite the urgency of the timeframes, the court granted a motion to enlarge the time for filing a motion for relief and enlarged the time to file motions to June 16, 2016—almost four months after the entry of the termination judgment.   By order dated June 3, 2016, we directed that the briefing schedule for the parents' pending appeal would be withdrawn "if, and only if, either parent file[d] a motion in the District Court pursuant to M.R. Civ. P. 60(b) on or before June 16, 2016."   The parents filed their motion alleging ineffective assistance of counsel at the termination hearing on June 15, 2016.

[¶17]   Again, for reasons that do not appear in the record, no hearing was immediately held on the parents' initial Rule 60(b) motion.   When no hearing had been held five months later, the parents moved to amend their motion on November 10, 2016, to include additional allegations of ineffective assistance during the jeopardy stage of the proceeding in the spring of 2014. Although these additional grounds were presented far beyond the already-extended deadline, the court granted the motion to amend and entered its judgment on February 17, 2017, based on the grounds raised in that amended motion.

[¶18]  In a child protection proceeding, allowing amendments to motions for relief months after the established deadline should not be permitted except in the most extraordinary of circumstances.  The State's interest in finding permanency for the child within a reasonable time, *see* 22 M.R.S. § 4003(4), makes child protection proceedings unique.  *See, e.g.*, 22 M.R.S. § 4052(2-A) (2016) (providing deadlines for the Department to file termination petitions).  Here, allowing an amendment of the motion five months after an already-extended deadline for filing a Rule 60(b) motion undermined the statutory goal of permanency.  *See* 22 M.R.S. § 4003(4).  It also negatively affected the particular needs of the children in this matter, who had, by the time the parents filed the motion to amend, spent three years in foster care—nearly nine months of which were *after* the entry of the judgment terminating the parents' parental rights.

[¶19]  Although we recognize the trial court's goal of protecting the parents' fundamental right to effective assistance of counsel, s*ee generally In re M.P.*, 2015 ME 138, 126 A.3d 718,  the court must be careful, in protecting that right, not to ignore the simultaneous interest of the State in promoting "the early establishment of permanent plans" for the children, 22 M.R.S. § 4003(4).  Thus, assuming, without deciding, that a challenge to the

14

effectiveness of counsel at a jeopardy proceeding may be considered by the trial court, here that challenge came far too late. To be clear, we have never allowed, nor prohibited, a parent's filing of a motion immediately after the entry of a jeopardy order to challenge the effectiveness of counsel at the jeopardy proceeding. Here, we address only the propriety of the parents' challenge to the jeopardy order through a motion that they filed long after the jeopardy order was entered and months after the entry of a termination order. Because we conclude that the court abused its discretion in allowing the late motion to amend the Rule 60(b) motion, we need not, in this area of evolving jurisprudence, determine whether or how a parent may challenge a jeopardy order based on a claim of ineffective assistance of counsel.

[¶20] In addition, because the court will, on remand, consider a claim of ineffectiveness of counsel at the termination stage, we also address the court's reasoning regarding the substance of the alleged ineffectiveness at the jeopardy stage. In essence, the court determined that counsel should have provided better information to the parents about the option of agreeing to a jeopardy finding without a trial and without a finding of an aggravating factor, thereby obtaining a tactical advantage as the case progressed if the court accepted the agreement and entered an order without the finding of an

aggravating factor.[6]  The futility of any such advice from counsel in this case must now be clear.  These parents have never agreed that they presented any jeopardy to their twins, nor have they argued that they needed more time, more services, more counseling, or additional parenting training.

[¶21]  Indeed, the parents have not argued that that *any* reunification services, other than increased visitation, were needed or would have made a difference.  Their position is quite clear from the trial testimony they offered.  They believe that the mother's actions did not cause Nathaniel's death.  They testified to their belief that they are emotionally, financially, and psychologically ready to be loving parents to their twins.[7]  Their families believe the same and stand ready to assist them in parenting.  In the face of this belief, the court's determination that the parents should now be provided with reunification services, or that the aggravating factors of the convictions and conduct "heinous or abhorrent to society" should be ignored, appears to provide a hollow remedy.  22 M.R.S. §§ 4002(1-B)(A), (B)(3), (5), 4036(1)(G-2), 4041(2)(A-2)(1), 4055(1-A)(A), (B)(3).  The fact of their

---

[6]  There is no assertion that the parents' right to effective assistance of counsel was in any way limited during the five-day, intensely contested jeopardy trial.

[7]  They also believed that they were prepared to be loving parents to Nathaniel, having agreed that corporal punishment would not be employed.  Despite that agreement, they admit that they treated Nathaniel roughly when his behavior (at just short of two years old) frustrated them.

convictions remains a matter of record. *See Allen*, 2006 ME 21, 892 A.2d 456 (father); *Allen*, 2006 ME 20, 892 A.2d 447 (mother). No court, at the termination stage regarding the twins, would have overlooked the convictions or the conduct of the parents toward Nathaniel. *See* 22 M.R.S. § 4055(1)(B)(2)(b), (1-A)(A), (B)(3). Because the parents do not suggest that they would have benefited from any reunification services other than increased visits, and they do not dispute that the convictions stand, they would have been in essentially the same position at the termination hearing had there been no cease reunification order or aggravating factor determination.

[¶22] In sum, given the intensely time-sensitive nature of child protection proceedings, we conclude that the court abused its discretion in granting the motion to amend the motion for relief to include allegations of ineffective assistance at the jeopardy stage. Moreover, given the absence of any meaningful remedy for the parents, who at most were deprived of a possible tactical advantage, there is no injustice in this determination. Accordingly, we vacate the court's order granting the motion to amend and ruling on the merits of the jeopardy-related ineffective assistance claims.

[¶23]   We now address the parents' contentions with respect to the termination order and the allegations of ineffective assistance of counsel at the termination proceeding.

C.    Termination of Parental Rights

[¶24]   In appealing from the termination judgment, the parents do not directly challenge the sufficiency of the evidence to support the findings of the court or the court's exercise of discretion in determining that termination is in the children's best interests.   Rather, they contend that the statutory presumption applicable at the termination stage when an aggravating factor has been found unconstitutionally shifts the burden of proof in violation of due process because the Department need no longer establish unfitness by clear and convincing evidence—the constitutionally required standard of proof.[8]

[¶25]   We review de novo whether a statute is unconstitutional as applied.  *Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 33, 86 A.3d 35.  Statutes are presumptively valid, with reasonable doubts resolved in favor of

---

[8]   Although neither parent challenged the court's interpretation or application of the statute through a post-judgment motion, we consider the issue to have been preserved because the mother's counsel, in closing argument, contended that the statute, which contains only permissive language, does not shift the burden of proof. *See Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 9, --- A.3d --- ("To preserve an issue for appeal, the party seeking review must first present the issue to the trial court in a timely fashion.").

constitutionality. *Id.* If a statute is ambiguous, meaning that it is susceptible to more than one interpretation, we will adopt an interpretation that renders the statute constitutional, provided that such an interpretation exists. *Id.*

[¶26] The constitutional issue before us concerns the statutorily created effect of the court's finding of an "aggravating factor." *See* 22 M.R.S. § 4002(1-B) (2016). That term is defined to include circumstances in which a parent was convicted of manslaughter or a "[f]elony assault that result[ed] in serious bodily injury" and "the victim of the crime was a child for whom the parent was responsible," *id.* § 4002(1-B)(B)(3), (5), and also the circumstance in which "[t]he parent has subjected any child for whom the parent was responsible to aggravated circumstances, including . . . treatment that is heinous or abhorrent to society," *id.* § 4002(1-B)(A).

[¶27] By statute, a finding of an aggravating factor can have two effects. First, "[i]f the court's jeopardy order includes a finding of an aggravating factor, the court may order the department to cease reunification, in which case a permanency planning hearing must commence within 30 days of the order to cease reunification." *Id.* § 4036(1)(G-2).

[¶28] Second, at the termination stage, "[t]he court may presume that the parent is unwilling or unable to protect the child from jeopardy and these

circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if . . . the parent has been convicted of . . . [m]anslaughter" and "[t]he victim . . . was a child for whom the parent was responsible." *Id.* § 4055(1-A)(B)(3). The presumption also arises if "[t]he parent has acted toward a child in a manner that is heinous or abhorrent to society or has failed to protect a child in a manner that is heinous or abhorrent to society, without regard to the intent of the parent." *Id.* § 4055(1-A)(A).

[¶29] Although the parents contend that the presumption contained in section 4055 impermissibly shifts the burden of proof, read in statutory context, this presumption differs from an ordinary presumption in a civil case. "In a civil case, unless a statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." M.R. Evid. 301(a).

[¶30] Here, however, we do not interpret the statute to shift the burden of proof. *See In re A.M.*, 2012 ME 118, ¶ 16, 55 A.3d 463; *cf. Guardianship of Chamberlain*, 2015 ME 76, ¶¶ 17-34, 118 A.3d 229 (requiring that, to balance the fundamental rights at stake, a petitioner in a guardianship proceeding bears the burden of proving unfitness by clear and convincing evidence).

[¶31]  Instead, 22 M.R.S. § 4055(1-A) is more akin to a "presumption" in a criminal case.  *See* M.R. Evid. 303(b) ("The court may permit a jury to infer guilt or a fact relevant to guilt based on a statutory or common law presumption or prima facie evidence, if the evidence as a whole supports guilt beyond a reasonable doubt.").  Interpreting the statute in this way, the finding of an aggravating factor allows a court to infer that the parent is unwilling or unable to protect the child from jeopardy and that the circumstances are unlikely to change within a time reasonably calculated to meet the child's needs.  22 M.R.S. § 4055(1)(B)(2)(b)(i), (1-A)(A), (B).  However, a court may reach an ultimate finding of unfitness only if the evidence in its entirety supports that finding by clear and convincing evidence.  *See* 22 M.R.S. § 4055(1)(B)(2)(b), (1-A)(A), (B) (2016); M.R. Evid. 303.  In essence, the statute delineates the specific facts and circumstances upon which a court may—but need not—reach an ultimate finding of parental unfitness.  *See id.* As the mother's counsel argued at the termination hearing, "Because it's a may, not a shall, not a will, there's no burden shift . . . ."

[¶32]  Reviewing the court's application of the statute, it is clear that the court fully considered the evidence presented by the Department and the parents.  The court ultimately reasoned, however, that the parents had failed

to meet "the burden to rebut the presumption of parental unfitness." As we clarify in our holding today, there is no burden on the parent to rebut the "presumption"; the burden remains always on the Department, and the parents have neither a burden of production nor a burden of persuasion or proof regarding the "presumption" addressed in section 4055(1-A). The termination order must therefore remain vacated, and we remand the matter for the trial court to apply the statute as we have construed it and determine whether the Department met its burden of proof on its petition to terminate the parents' rights to the twins.

[¶33] Thus, to be clear, we affirm the court's decision vacating its termination order, although we do so on other grounds. On remand, the court must decide whether to infer from the parents' convictions and all other evidence presented at the termination hearing that the parents are unwilling or unable to protect the children from jeopardy and that the circumstances are unlikely to change within a time reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (1-A)(A), (B)(3). Whether or not the court makes an inference, it must determine whether the evidence in its entirety supports a finding of unfitness by clear and convincing evidence. *See* 22 M.R.S. § 4055(1)(B)(2)(b); *see also* M.R. Evid. 303.

D.    Ineffective Assistance of Counsel at the Termination of Parental Rights Hearing

[¶34]    The only question remaining is whether the parents' legal representation at the termination hearing was constitutionally insufficient. At the termination hearing, the parents' position, as noted previously, was that the court should look again at the facts surrounding Nathaniel's injuries and conclude that a medical cause other than those attributable to the mother resulted in their toddler's death. Whether, in the face of undisturbed criminal convictions for the assault and manslaughter of Nathaniel, counsel could have effectively presented a challenge to the Department's position both legally and factually must be determined by the trial court. *See In re M.P.*, 2015 ME 138, ¶¶ 26-27, 126 A.3d 718. The District Court did not reach or make findings on this issue, and depending on the court's decision on termination, it must do so expeditiously on remand based on the record that has already been created.

The entry is:

> The order granting the motion to amend relating to the jeopardy proceeding and granting in part the motion for relief from judgment is vacated. The order vacating the termination of each parent's parental rights is affirmed on other grounds. The matter is remanded for the court's prompt decision on the Department's petition for termination of the parents' parental rights. If the court terminates

parental rights, it must also rule on the Rule 60(b) motion pertaining to the effectiveness of counsel at the termination stage.

---

ALEXANDER, J., with whom, JABAR, J., joins, concurring in part and dissenting in part.

[¶35] I concur in the Court's opinion addressing the jeopardy order; its analysis of the law regarding the statutory "presumption" arising from an aggravating factor, 22 M.R.S. § 4055(1-A)(A), (B)(3) (2016); and its analysis of the evidence in this case, where the facts regarding the parents' prior history of dangerousness to children and their current concerning views about their capacity to parent children are not particularly close.

[¶36] I respectfully dissent only from the Court's remand to the trial court for further findings regarding application of the statutory presumption and effectiveness of trial counsel. As the Court observes, addressing parents' due process rights, "the [trial] court must be careful, in protecting that right, not to ignore the simultaneous interest of the State in promoting 'the early establishment of permanent plans' for the children." Court's Opinion ¶ 19 (quoting 22 M.R.S. § 4003(4) (2016)). Delaying finality and permanency for these children pending further findings on remand is neither necessary nor in the best interests of the children.

[¶37]  Without requiring further findings, I would simply vacate and remand with direction to reinstate the termination of parental rights judgment and move on to the question of permanent placement, without further delay.

[¶38]  We have not developed a significant body of precedent addressing application of the statutory presumption in cases where a parent, opposing termination of parental rights, has previously been convicted, after trial, of causing a child's death or serious bodily injury.  Nor have we frequently addressed issues of ineffective assistance of counsel in cases of termination of parental rights.

A.     Statutory Presumption or Constitutionally Required Inference

[¶39]  A trial court ruling, even if in error, will not result in vacating the judgment if the error was "harmless"—that is, if the error did not result in substantial injustice or affect substantial rights.  *See* M.R. Civ. P. 61; M.R.U. Crim. P. 52(a); *see also* M.R. Evid. 103(a).

[¶40]   A properly preserved error that is not of constitutional dimension is harmless "if it is highly probable that the error did not affect the judgment."  *State v. Guyette*, 2012 ME 9, ¶ 19, 36 A.3d 916; *see also In re Scott S.,* 2001 ME 114, ¶¶ 24-25, 775 A.2d 1144; *Williams v. United States*,

503 U.S. 193, 203 (1992). In criminal cases, with constitutional protections equal to or greater than those applicable to the termination of parental rights case at issue here, the State has the burden of persuasion on appeal to demonstrate that an error was harmless. *State v. Dolloff*, 2012 ME 130, ¶ 34, 58 A.3d 1032; *see also United States v. Olano*, 507 U.S. 725, 734 (1993). The essential question is whether it is highly probable that any error did not affect the trial court or jury decision. *State v. Mangos*, 2008 ME 150, ¶ 15, 957 A.2d 89.

[¶41] The Court correctly notes that the presumptive error at issue here affected the parents' constitutional rights. An error in a criminal case that affects constitutional rights can be subject to harmless error analysis. *Washington v. Recuenco,* 548 U.S. 212, 218 (2006). In *Recuenco,* the Supreme Court held that if a defendant had counsel and was tried by an impartial adjudicator, "there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Id.*; *see also Neder v. United States,* 527 U.S. 1, 8 (1999) (applying harmless error analysis when a jury was not instructed on one essential but undisputed element of a crime).

[¶42]    The appropriate harmless error inquiry on an issue of constitutional rights in a termination of parental rights case is whether, upon review of the whole record, we are satisfied that "it is highly probably that the error did not prejudice the parents or contribute to the result in the case.  The State's burden of persuasion is high.  Any doubt will be resolved in favor of the parent." *In re Scott S.*, 2001 ME 114, ¶ 29, 775 A.2d 1144.  Here, it is apparent, without any doubt, that the trial court's erroneous application of a burden-shifting presumption analysis, rather than the constitutionally required inference analysis, to find aggravating factors based on the parents' prior convictions for causing death or serious bodily injury to a child did not contribute to the final decision terminating parental rights.  The parents' prior convictions and their continued claims of lack of responsibility for the death of their first child compelled the result reached by the trial court, even if the inference analysis, leaving the burden of persuasion on the State, had been properly applied.

B.    Effective Assistance of Counsel

[¶43]  The standard for post-conviction review of claims of ineffective assistance of trial counsel—the most common post-conviction review issue— has been stated in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

[¶44]   In *Theriault v. State*, 2015 ME 137, ¶ 13, 125 A.3d 1163, we recognized that "*Strickland* is the 'seminal case' that establishes the standards controlling the disposition of claims of ineffective assistance of counsel." (quoting *Manley v. State*, 2015 ME 117, ¶ 12, 123 A.3d 219).   Referencing *Manley*, we noted that "we reaffirmed that [*Strickland*] dispositively establishes the criteria in ineffectiveness claims, including the nature of prejudice that the petitioner must establish, despite language in some of our opinions that is not fully consistent with that federal authority."   *Theriault*, 2015 ME 137, ¶ 13 n.3, 125 A.3d 1163.

[¶45]   Thus, in *Theriault*, we adopted the *Strickland* standard that to demonstrate ineffective assistance of counsel sufficient to overturn a judgment on post-conviction review "the petitioner must demonstrate two points: first, 'that counsel's representation fell below an objective standard of reasonableness,' and second, that 'errors of counsel . . . actually had an adverse effect on the defense.'"   *Id*. ¶ 14 (quoting *Strickland*, 466 U.S. at 688, 693).

[¶46]   Here, the Court accurately points out that the parents had been convicted of crimes—manslaughter for the mother, felony assault on a child under six years of age for the father—that resulted in the violent death of their first child, a child whom they had adopted.   Despite those prior

convictions, counsel for the parents succeeded in convincing the trial court in the jeopardy proceeding to allow the parents to relitigate the cause of the death of their first child. In the jeopardy proceeding, the parents, testifying under oath, refused to accept any responsibility for the death of their first child, focusing instead on their anger toward the legal system.

[¶47] The parents' ineffective assistance claim appears to place blame on counsel for the tactical choice in the jeopardy proceeding to contest, rather than concede, jeopardy when, with the concession, the parents could have received parenting assistance services and perhaps visitation with the twins after receiving services. However, from the available record it is evident that it was the parents, not counsel, who refused to accept their already decided responsibility for the death of their first child. *See State v. Allen*, 2006 ME 21, 892 A.2d 456; *State v. Allen*, 2006 ME 20, 892 A.2d 447.

[¶48] No ineffective assistance of counsel is demonstrated by counsel's tactical choice, evidently based on their clients' wishes, to litigate the jeopardy issue. The record does reflect that the parents were advised of the State's proposal to avoid the jeopardy proceeding and rejected it, choosing to litigate instead. Second-guessing counsel's tactical choices after an unfavorable result

is a frequent but rarely successful ploy in post-conviction proceedings. Recognizing this, the *Strickland* court observed:

> It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

466 U.S. at 689.

[¶49] To counter this tendency, *Strickland* holds:

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[¶50] *Theriault*, reflecting *Strickland*, holds that to overcome this presumption and succeed in vacating a judgment in a post-judgment proceeding asserting ineffective assistance of counsel, a challenger must meet the burden of demonstrating (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that errors of counsel actually had an adverse effect on the defense. 2015 ME 137, ¶ 14, 125 A.3d 1163.

[¶51] Here, no ineffectiveness of counsel is demonstrated in the tactical choices about which the parents complain, and even if ineffectiveness were

demonstrated, the parents, causing the tragic death of their first child and refusing to acknowledge any responsibility for their child's death, make the end result, termination of their parental rights, inevitable—so any incompetence of counsel could not have any adverse effect on their defense in these proceedings.

[¶52] The parents cannot meet their burden to demonstrate that errors of counsel, if any, had any adverse effect on their defense of the proceedings or could have affected the ultimate result. There are no facts left for the District Court to adjudicate. The matter should be remanded only to reinstate the termination of parental rights judgment and let the children get on with their lives.

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellant Department of Health and Human Services

Rory A. McNamara, Esq., Drake Law, LLC, Berwick, for appellee father

Heidi M. Pushard, Esq., Law Office of Heidi M. Pushard, Lewiston, for appellee mother

Lewiston District Court docket number PC-2013-73
FOR CLERK REFERENCE ONLY