MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:     2018 ME 43
Docket:       And-17-334
Submitted
  On Briefs:  March 7, 2018
Decided:      March 22, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILD OF GUSTAVUS E.


PER CURIAM

[¶1]  In this child protection action commenced by three petitioners, the father of the child appeals from a judgment entered by the District Court (Lewiston, *Dow, J.*) terminating his parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(b) and (B)(2)(a), (b)(i)-(ii) (2017).  The father primarily contends that the court erred by invoking the "rebuttable presumption" contained in 22 M.R.S. § 4055(1-A)(A), (B)(8) (2017) in its unfitness analysis because, he asserts, the evidence in its entirety does not support a finding of unfitness.  Additionally, he argues that there is insufficient record evidence to support the court's finding that termination of his parental rights is in the child's best interest.  Because the court did not err in either respect, we affirm the judgment.

## I. BACKGROUND

[¶2]  In September 2016, the mother, along with two other petitioners, filed a petition for child protection, *see* 22 M.R.S. § 4032(1)(C) (2017), which alleged that the child was in jeopardy due to the father's recent conviction of unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(M) (2017).[1]  In October 2016, the Department of Health and Human Services filed a motion to cease reunification with the father based on the aggravating factor of his conviction.  *See* 22 M.R.S. § 4002(1-B)(A)(1) (2017); 22 M.R.S. § 4041(2)(A-2)(1) (2017).  In November 2016, the mother, who is the child's legal custodian, *see* 22 M.R.S. § 4002(5) (2017), filed a petition to terminate the father's parental rights to the child.  *See* 22 M.R.S. § 4052(1) (2017).[2]  In April 2017, the court held a hearing on all pending matters: the petition for child protection; the petition to terminate the father's parental rights; and the Department's motion to cease reunification with the father.

[¶3]  By order dated July 14, 2017, the court granted the Department's motion to cease reunification with the father and terminated the father's

---

[1]  Title 17-A M.R.S. § 255-A(1)(M) (2017) provides that "[a] person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person is in fact less than 18 years of age and the actor is a parent, stepparent, foster parent, guardian or other similar person responsible for the long-term general care and welfare of that other person."

[2]  Although not required by 22 M.R.S. § 4052(1) (2017), the termination petition was a three-party petition.  *Compare* 22 M.R.S. § 4032(1)(C) (2017), *with* 22 M.R.S. § 4052(1).

parental rights. After the court entered judgment, the father appealed the court's termination of his parental rights. He primarily argued that the court misapplied the rebuttable presumption contained in 22 M.R.S. § 4055(1-A)(A), (B)(8) by shifting the evidentiary burden to the father in contravention of our August 2017 opinion in *In re Evelyn A.*, which held that "a court may reach an ultimate finding of unfitness only if the evidence in its entirety supports that finding by clear and convincing evidence" and that the parent whose rights are at stake has "neither a burden of production nor a burden of persuasion or proof regarding the 'presumption' addressed in section 4055(1-A)." 2017 ME 182, ¶¶ 31-32, 169 A.3d 914. Because *In re Evelyn A.* was published after the hearing and the entry of judgment in this case, we granted a stay pending further trial court action. After reconsideration of the testimony and evidence presented during the April 2017 hearing, the court issued an amended judgment dated October 31, 2017, terminating the father's parental rights.

[¶4] The court, in its amended judgment, found the following facts, which are supported by competent record evidence:

> The father is incarcerated and is under probation conditions that prohibit contact with children. . . .
>
> . . . .

Respondent-father was convicted of Unlawful Sexual Contact, Class C, on February 9, 2016. . . .

The victim of the father's crime was the daughter of his live-in partner. The father was in a stepparent role for that child at that time. The father touched that child's vagina on multiple occasions when the child was between six and eight years old. The Court finds this conduct to be heinous and abhorrent to society.

. . . .

In February, 2017, the father completed six months of voluntary sex offender treatment called cognitive-behavioral interventions for sex offenders. This treatment was offered . . . by the Department of Corrections (DOC). This treatment does not require offenders to admit the sexual abuse. The six-month duration of the treatment is much different from the three-year sex offender treatment program offered at other facilities in DOC or to probationers in the community. In addition to being six times longer, that program requires offenders to admit to sexual abuse. When the father started the treatment, the DOC administered the STATIC-99 assessment, which placed the father at moderate to high risk for re-offense. By the time the father completed the treatment, the DOC had adopted the policy of administering a dynamic risk assessment, the Sex Offender Treatment Intervention and Progress Scale, at both ends of the treatment. The father's score on that assessment placed him at low risk for re-offense. The shift in risk assessment tools means that the Court would be comparing apples to oranges if it tried to draw conclusions about the father's actual progress in treatment. The father was not responsible for the shift in risk assessment tools.

Regardless of the utility of the risk assessment results, the Court finds that the father's voluntary engagement in the only treatment available, given his short two-year sentence, is better than nothing. The treatment fails, however, to alleviate the Court's concern that [the child] would be subject to a threat of sexual abuse or exploitation by her father, and that threat constitutes jeopardy.

The Court also finds that the father's substance abuse and mental health history poses jeopardy to the child. Prior to his incarceration, the father abused amphetamines and opiates. He has suffered from serious anxiety and depression. It would take treatment and measurable stability and health to alleviate that jeopardy.

If everything goes well for the father—he gets released from prison this fall, starts the three-year sex offender treatment, as well as mental health and substance abuse treatment, and successfully completes it—[the child] will then be the same age as the known victim of the father's sexual abuse. The father will be on probation for four years after his release, with one of the conditions being no contact with children under 18. . . . The Court finds that jeopardy cannot possibly be alleviated within four-and-a-half years.

. . . .

Respondent-father's custody of [the child] has been removed by an order of this Court . . . under the authority in 19-A M.R.S. § 1653. . . .

Turning to the question of unfitness, the Court finds by clear and convincing evidence that respondent-father is unfit to parent [the child] by virtue of his being unable to protect her from jeopardy and unable to take responsibility for her in a time reasonably calculated to meet her needs.

. . . .

. . . Father's counsel ably elicited testimony from the father's prison-based counselor that he was at moderate to high risk for re-offense before a six-month stint of sex offender treatment and at low risk afterwards. The Court is not able to give that testimony great weight, for reasons discussed above. However, the Court would not be persuaded of father's fitness to parent even by a statistically valid risk assessment comparison. The Court finds that

the father has much more work to do, by any measure, to alleviate the risks posed by his history of sexual abuse, substance abuse, and mental health struggles.

. . . .

[The child] was born on November 5, 2013. Her parents were then living together. The investigation into the father's sexual abuse of the other child began in March of 2014. In May of 2014, [the Department] filed a child protection petition and [the mother] moved to her mother's home with [the child]. On August 7, 2014, the Court entered an interim order granting to the mother sole parental rights and responsibilities and to the father supervised visitation. . . . The father has not seen [the child] since he was incarcerated.

The Court draws from this evidence the reasonable inferences that [the child's] primary attachment is with her mother. [The child's] only opportunity to form a secure attachment with the father ended more than three years ago. [The child's] ability to integrate into the father's home . . . would be the same as her ability to integrate into the home of a stranger. It would be stressful for [the child]. . . .

. . . .

The [guardian ad litem] believes that termination of the respondent-father's rights to [the child] is in the child's best interest. Based upon the clear and convincing evidence, the Court agrees.

We now consider the father's timely appeal. *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2 (Tower 2016).[3]

## II. DISCUSSION

[¶5]    Although the father challenges the court's application of the rebuttable presumption contained in 22 M.R.S. § 4055(1-A)(A), (B)(8), he no longer argues that the court improperly shifted the burden to him to rebut the presumption.  Instead, the father argues that because there is evidence in the record to show that he has made progress through services offered by the Department of Corrections, the court's unfitness findings are not supported by sufficient evidence.  He also challenges the court's finding that termination is in the best interest of the child.  Reviewed for clear error, there is competent evidence to support both the court's unfitness findings and its finding that termination of the father's parental rights is in the child's best interest. *See In re Logan M.,* 2017 ME 23, ¶ 3, 155 A.3d 430.

A.    Unfitness

[¶6]    In its amended judgment, the court determined that its factual findings regarding the father's conduct and conviction created "a permissible

---

[3] Although the amended judgment in this case was entered after September 1, 2017, the restyled rules do not apply because the father's notice of appeal was filed before September 1, 2017. *See* M.R. App. P. 1.

8

inference of unfitness" pursuant to 22 M.R.S. § 4055(1-A)(A), (B)(8), which provides,

> **1-A. Rebuttable presumption.** The court may presume that the parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if:
>
> > **A.** The parent has acted toward a child in a manner that is heinous or abhorrent to society . . . .
> >
> > **B.** The victim of any of the following crimes was a child for whom the parent was responsible or the victim was a child who was a member of the household lived in or frequented by the parent and the parent has been convicted of:
> >
> > . . . .
>
> **(8)** Sexual abuse of minors.

We have recently concluded that this "rebuttable presumption" does not permit the shifting of any burden to the parent. *See In re Evelyn A.*, 2017 ME 182, ¶¶ 24-33, 169 A.3d 914. Rather, it "is analogous to a permissive inference in criminal cases, where the fact-finder is entitled to reach a certain conclusion based on a specified factual predicate." *In re Addilyn R.*, 2017 ME 236, ¶ 4, 176 A.3d 184.

[¶7] Here, although the court found that it could permissibly make an inference of unfitness, it nonetheless carefully considered *In re Evelyn A.*, 2017 ME 182, 169 A.3d 914, in its analysis and stated that before it could make

any ultimate unfitness findings, it "must decide whether to infer from the father's conviction and *all other evidence* presented at the termination hearing" that the father was, in fact, unfit. (Emphasis added.) And although "the court invoked the evidentiary analysis allowed by" the statute, "the judgment demonstrates that the court treated that statute as the pathway to an inference, and placed the burden of proof entirely on the [petitioner] and did not require or expect the [father] to meet any evidentiary burden." *In re Addilyn R.*, 2017 ME 236, ¶ 4, 176 A.3d 184.

[¶8] It is clear from the record that the father has successfully engaged in some services during his incarceration. Regardless, viewing the evidence in its entirety, there is competent evidence to support the court's findings that (1) the father is unable to protect the child from jeopardy, and that is unlikely to change in a time which is reasonably calculated to meet the child's needs, and (2) the father is unable to take responsibility for the child in a time which is reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).

B. Best Interest

[¶9] The father additionally contends that there is insufficient evidence to support the court's finding that termination is in the best interest of the child.

Contrary to that contention, sufficient record evidence exists—including sufficient record evidence to support the court's finding that the child's opportunity to form a secure attachment with the father ended more than three years ago and its finding that any future integration into the father's home would be akin to integrating into the home of a stranger—to support the court's determination that termination of the father's parental rights is in the child's best interest. *See In re Tyrel L.*, 2017 ME 212, ¶ 15, 172 A.3d 916; *see also* 22 M.R.S. § 4055(2) (2017); *In re Jacob B.*, 2008 ME 168, ¶ 14, 959 A.2d 734.

The entry is:

Judgment affirmed.

---

Richard Charest, Esq., Lewiston, for appellant father

Lorne Fairbanks, Esq., Lewiston, for appellee petitioners

Lewiston District Court docket number PC-2016-62
FOR CLERK REFERENCE ONLY