MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2013 ME 85
Docket:        And-13-61
Submitted
 On Briefs:    September 26, 2013
Decided:       October 15, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## IN RE A.H.

SAUFLEY, C.J.

[¶1]  In this appeal, we are asked to review a judgment entered in the District Court (Lewiston, *Beliveau, J.*) terminating the mother's and father's parental rights to a child who has extreme medical needs.  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2) (2012).  The parents argue that there was insufficient evidence to support the court's finding that, although they loved their child, they were unfit to parent her and termination was in the child's best interest.[1]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Since her birth in November 2010, A.H. has suffered from severe medical conditions that would challenge any parent.  These conditions include Alagille Syndrome, a genetic disorder affecting major organs; cholestasis, a

---

[1]  The parents also challenge the court's finding that the Department satisfied its statutory obligation to engage in good-faith reunification efforts with the parents pursuant to 22 M.R.S. § 4041 (2012).  Based on the evidentiary record and the rehabilitation and reunification plan filed with the court, which was signed by both parents, we affirm the court's determination that the Department satisfied its obligations, and we do not discuss this issue further.

condition affecting the liver; congenital heart disease; and kidney defects including urinary reflux disorder.

[¶3]  The child required hospitalization three times when she was in the care of her parents because she was not receiving adequate nutrition.  As a result of the third hospitalization, the Department petitioned for and was granted an order of preliminary child protection for A.H. on November 3, 2011.  The child was placed in a foster home and has been there ever since.  The court entered an order on March 2, 2012, in which it found that the child was in circumstances of jeopardy to her health and welfare in the care of her parents and ordered that the child remain in the custody of the Department in her existing foster placement.  *See* 22 M.R.S. § 4035 (2012).

[¶4]  After being placed with foster parents, the child had an immediate weight gain, and she has continued to gain weight at a higher rate than when she was in her parents' care.  Although the child remains quite small, she is following the trajectory of the growth chart curve and has become healthier.  She has not been hospitalized since entering foster care.

[¶5]  The child is now mobile, and she requires at least as much care as she did during her first year of life.  Because she has a gastronomy pump that she is unable to carry around by herself, the foster mother follows the child while holding the pump.  While the child is attached to the pump—from 10:00 a.m. to

3:30 p.m.—the foster mother watches her constantly. Because the child is also attached to the pump overnight, the foster mother monitors her throughout the night for fear that the pump cord could become wrapped around the child's neck. The child wakes up five to twenty times per night.

[¶6] A.H. engages in physical, occupational, and speech therapy every week at the foster home. She also has at least three medical appointments per month and receives in-home help fifteen hours per week. Her pediatrician determined that she cannot tolerate any amount of neglect.

[¶7] From this record, it is not an overstatement to say that the child's very life depends on the consistent, unwavering attention of her caregivers. The foster parents are able to manage care for this fragile child through their concerted joint efforts. They would like to adopt A.H.

[¶8] The mother and the father each underwent Child Abuse and Neglect Evaluation Program (CANEP) evaluations, which demonstrated that they both have limited intellectual capacity. They scored low in perceptual reasoning, a risk factor for child maltreatment.

[¶9] Despite being allowed visits with the child and having the opportunity to attend the child's medical appointments, the parents were not able to learn to care for all of A.H.'s needs. The parents also could not be productive at family team meetings because they did not recognize what they had done to place A.H. in

4

jeopardy and blamed the Department for their child being removed from their home.

[¶10] Based on the CANEP evaluations and the parents' lack of progress in rehabilitation, the Department petitioned for the termination of each parent's parental rights in July 2012. After an evidentiary hearing, the court entered a judgment terminating both parents' parental rights on December 19, 2012.

[¶11] The court determined that, although the parents love their daughter and strongly desire reunification, there are minimal prospects for timely success in that endeavor. The parents reluctantly admit that they may have made mistakes, but they are unable to identify what those mistakes were or how they would modify their behavior to care for the child. Due to the child's substantial medical needs and the poor prognosis for improvement in the parents' ability to understand and meet her needs, the court found that there was no prospect that the parents would ever be able to safely parent this child.

[¶12] Accordingly, the court found two grounds of unfitness: (1) that the parents were unable to protect the child from jeopardy and that those circumstances were unlikely to change within a time reasonably calculated to meet the child's needs, and (2) that the parents were unable to take responsibility for the child within a time reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii). The court further found that the termination of parental

rights and adoption by the foster parents was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a). Both parents timely appealed. *See* 22 M.R.S. § 4006 (2012); M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶13] The parents challenge the court's findings regarding parental unfitness and the best interest of the child. We address each issue separately.

A.  Unfitness

[¶14] If any one of the alternative bases of parental unfitness found by the court is supported by clear and convincing evidence, the determination of unfitness will be affirmed. *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260. We review the court's factual findings regarding unfitness "to determine whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable." *Id.* (quotation marks omitted).

[¶15] Here, the court determined, with solid evidentiary support, that the child has substantial and critical needs that the parents, despite their sincere desire and efforts, will never be able to meet. Given the evidence that these parents, however loving, will never have the capacity to adequately care for this child with her significant medical needs, the court could reasonably have been persuaded that it was highly probable that the parents were unable to protect the child from jeopardy to her health or welfare and were unable to take responsibility for her

within a time reasonably calculated to meet her needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii).

B. Best Interest of the Child

[¶16] "With regard to the best interest determination, we review the court's factual findings for clear error but its ultimate conclusion for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260 (citations omitted) (quotation marks omitted). "[F]or all children, permanency and stability are legislatively mandated goals, and the impermanency of foster care is to be avoided." *In re Thomas H.*, 2005 ME 123, ¶ 27, 889 A.2d 297 (quotation marks omitted). "[T]he strong public policy favoring permanency for children must inform the trial court's exercise of judicial discretion associated with determining a child's best interest, as well as any subsequent appellate review." *Id.* ¶ 29.

[¶17] The court was faced with the difficult decision of whether to terminate the parental rights of a loving mother and father who sincerely wished to bring their child back into their home but who do not have the capacity to provide the consistent, day-to-day intensive attention and care that she needs. Because of the child's precarious medical condition, the court prioritized the child's health and safety in making its decision, focusing on the child's need for consistent lifesaving nutrition and medical treatment.

[¶18]  A.H. is very fortunate to have foster parents who are committed and are willing to adopt her and provide a permanent home.  Because of the parents' poor prognosis for understanding and implementing necessary medical treatment, and given the child's need to have a permanent home, the court did not abuse its discretion in concluding that, notwithstanding the parents' love and affection for the child, termination of the parents' parental rights and adoption by the capable and devoted foster parents are in the best interest of this fragile child.  *See* 22 M.R.S. § 4055(1)(B)(2)(a).

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Stephen J. Sucy, Esq., Lewiston, for appellant father

Lorne Fairbanks, Esq., Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee Department of Health and Human Services