MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 79
Docket:        Yor-14-423
Submitted
 On Briefs:   April 23, 2015
Decided:       June 30, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

## IN RE K.M.

PER CURIAM

[¶1]   The father of K.M. appeals from a judgment entered by the District Court (Biddeford, *Foster, J.*) terminating his parental rights to the child pursuant to 22 M.R.S. § 4055(1) (2014).  The father challenges the sufficiency of the evidence supporting the court's findings that he is not fit to parent the child and that termination of his parental rights is in the child's best interest.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The child was removed from the family home in May 2012, after the child's sister overheard the father threaten to kill the child's mother and repeated what she had heard at school.  In October 2012, after a contested hearing, the court entered a jeopardy order, finding that although the father had not abused the child, he had been verbally and emotionally abusive toward the mother, and had exposed the child to verbally violent confrontations.  The court further found that the father's "flawed perceptions of [the sister's] behaviors, coupled with his insistence

that the eight-year-old [sister] is responsible for all of the family's misfortunes and difficulties, result in an unrelenting verbal and emotional assault of the [sister]." Finding no evidence that the child would be insulated from the father's emotional volatility or propensity to assign blame, the court concluded that the father's unstable mental health placed the child at risk of harm.

[¶3]  In November 2013, the Department of Health and Human Services filed a petition to terminate the father's parental rights.  At the June 2014 hearing on that petition, the court heard the following competent evidence regarding the father's compliance with the Department's reunification plan.

[¶4]  The father regularly attended family team meetings but was incapable of using them to discuss the Department's concerns.  During these meetings, he persisted in demonizing the sister, accused the Department of plotting against him, and blamed the mother for the Department's involvement with the family.  His emotional volatility rendered the meetings unproductive, leading to their ultimate suspension.

[¶5]  The father began attending weekly mental health counseling sessions in the fall of 2012.  At the time of the hearing, the father and his counselor had not begun to work on the issue of domestic violence.  The counselor testified that it was very difficult for the father to reflect on the behaviors that he needed to change.  The counselor also testified that the father has difficulty managing his

perceptions and tends to adversely characterize those who do not share his views. The counselor opined that the father's adversarial outlook would isolate the child and place him at risk of emotional abuse.

[¶6] During the hearing, the father characterized the proceeding as a conspiracy against him. He refused to acknowledge the domestic violence dynamics that precipitated the Department's involvement with the family, explaining his treatment of the mother and the sister as a natural reaction to their behaviors. He attributed his explosive outbursts at family team meetings to deliberately provocative conduct by the Department's caseworker and the guardian ad litem. He also accused the court of bias, and conceded that he had not read the entire jeopardy order because he found it to be "nonsense."

[¶7] At the hearing, the court also heard competent evidence that the child had spent nearly two years of his three-year-long life in a foster placement with his aunt, that he was attached to her, and that she was willing to adopt him.

[¶8] In September 2014, the court entered an order granting the Department's petition. In its order, the court found that although the father had engaged in the services required for reunification, he had "failed to use the designated services to understand the [c]ourt's concerns and make the changes necessary to address those concerns." The court found by clear and convincing evidence that the father is unable to protect the child from jeopardy and that these

4

circumstances are unlikely to change within a time reasonably calculated to meet the child's needs. The court also found by clear and convincing evidence that the father is unable to take responsibility for the child within a time reasonably calculated to meet the child's needs, and that termination of the father's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1).

## II. DISCUSSION

[¶9] "When reviewing sufficiency challenges for clear and convincing evidence, we examine whether the trial court could have reasonably been persuaded on the basis of evidence in the record that the required factual findings were highly probable." *In re M.S.*, 2014 ME 54, ¶ 13, 90 A.3d 443 (quotation marks omitted). If the record contains competent evidence to support the court's findings, we must sustain them. *Id.* "Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

[¶10] There is abundant evidence here that, despite the father's participation in counseling and other reunification services, he remains unable to accept responsibility for his actions, regulate his response to challenges, or recognize the threat that his unstable mental health poses to members of his household. From this evidence, the court could reasonably have been persuaded that the father is currently unable to protect the child from jeopardy and that these circumstances are

unlikely to change within a time that would meet the child's needs. *See In re Thomas H.*, 2005 ME 123, ¶¶ 8, 20-21, 889 A.2d 297 (affirming the court's unfitness finding as to the mother when she remained unable to identify individuals who presented a risk of harm to her children despite her participation in counseling and other reunification services).

[¶11] The record also contains ample support for the court's finding, by clear and convincing evidence, that termination of the father's parental rights is in the child's best interest. Although the child has a relationship with the father, the father has been unable to address the mental health issues that exposed the child to jeopardy in the family home. In addition, after spending most of his life in her home, the child is very attached to his aunt. *See* 22 M.R.S. § 4055(2) (2014); *In re Kayla M.*, 2001 ME 166, ¶ 13, 785 A.2d 330 ("The best interest of the child standard . . . is met when there has been significant bonding with the foster [parent], the child has not experienced any substantial period of separation from the foster [parent], and the foster [parent's] . . . home provides the stability that the child needs . . . .") (quotation marks omitted).

The entry is:

Judgment affirmed.

6

**On the briefs:**

Peter M. McGee, Esq., South Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2012-24
FOR CLERK REFERENCE ONLY