MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:      2015 ME 106
Docket:        Pen-15-14
Submitted
 On Briefs:    July 1, 2015
Decided:       August 6, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

IN RE P.O. et al.

SAUFLEY, C.J.

[¶1]  The parents of P.O., J.O., and N.O. appeal from a judgment entered in the District Court (Bangor, *Campbell, J.*) terminating their parental rights to their three children after the youngest child, N.O., handled her parents' gun and accidentally shot herself while her mother was at work and her father was in the home.  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2) (2014).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In the fall of 2013, three-year-old N.O. obtained access to a loaded firearm in the family home and suffered a serious gunshot wound while her older siblings, who were five and six years old, were present in the home.  In an earlier child protection matter that same year, the parents had been warned by the Department of Health and Human Services of ongoing concerns regarding the safe possession and use of firearms.  Nonetheless, on October 30, 2013, the parents left a loaded semi-automatic handgun in reach of the three children.  While the mother

was at work and the father was doing other things in the home, N.O. got the gun and shot herself in the neck. When the police responded after the gunshot, they found steroids, syringes, and $3,500 in cash in the residence.

[¶3] The Department petitioned for a child protection order for the three children, and the court granted the Department's request for a preliminary protection order. The children were placed in the care of their maternal grandparents.

[¶4] After the appointment of counsel, the parents each waived the opportunity for a summary preliminary hearing. The court appointed the same guardian ad litem who had, earlier in 2013, been appointed in the previous child protection matter involving the family.

[¶5] With the agreement of the parents, the court entered a jeopardy order on February 12, 2014. *See* 22 M.R.S. § 4035 (2014). Jeopardy was based on (1) the circumstances that led to N.O.'s injuries, which persisted despite the Department's earlier warnings to the parents about the safe use and possession of firearms; (2) the children's reports that they had witnessed the father's violence toward their mother and another person; (3) the recovery of needles, steroids, and cash from the home by police; and (4) the children's observation of needles in the home and awareness of where the needles were kept. Among other things, the order directed the father to participate in a Court Ordered Diagnostic Evaluation

(CODE) and anger management counseling, and ordered the mother to participate in individual counseling.

[¶6] The Department petitioned for termination of the parents' parental rights in October 2014. The court held a three-day evidentiary hearing and entered its judgment terminating each parent's parental rights in December 2014. The court found the following facts by clear and convincing evidence, and its findings are supported by competent evidence in the record. *See In re K.M.*, 2015 ME 79, ¶ 9, --- A.3d ---.

[¶7] Although the parents are extremely upset about what happened to N.O., neither has accepted responsibility for their actions that caused the child's injuries. The mother claimed that she was the last one in possession of the gun, which she said she moved from the top of the kitchen cabinets to the top of the refrigerator the day before the shooting. The father claimed that he did not see the firearm on the day of the shooting, did not know where it was, and stored it with a clip in the gun but no bullet in the chamber. The parents' accounts of the events—postulating that an intruder or one of the mother's family members might have entered the residence and moved the gun—were not credible. As the court found, the mother was likely attempting to cover for the father.

[¶8] The father was suspicious, resistant, and uncooperative during his CODE, and he showed no sense of empathy or remorse for what happened to N.O.

4

He blames his wife for the incident and displays a narcissistic interpersonal style that limits his ability to put others' needs ahead of his own. He presents with a mood disorder and symptoms of an intermittent explosive disorder, with mixed features of paranoid and antisocial personality disorders. He is chronically unstable in managing his emotions and behavior; he overreacts, is aggressive, and has difficulty maintaining impulse control. For instance, the father became agitated and made remarks about getting a gun to protect himself after reviewing reader comments attached to a news article about his daughter's shooting. The father needs long-term treatment to address personality issues but must first become motivated and committed to change. Even if the father were highly motivated, such treatment could take three to five years.

[¶9] The CODE recommendation was for the father to be referred for "acceptance commitment therapy," but despite reasonable efforts on the Department's part, it proved difficult to find a qualified therapist in the area who was willing to work with the father. One qualified clinical psychologist refused to engage the father in therapy because of the father's resistance to taking neutral tests and refusal to recognize that any problem needed to be addressed. Notwithstanding the Department's reasonable efforts to locate another therapist, no professional could be found who would accept the father for the recommended

treatment, and the father's lack of cooperation has remained unchanged, with his psychological issues going unaddressed.

[¶10] Although the father has made some progress, he has not made a good faith effort to cooperate with routine testing for purposes of obtaining proper treatment. Because he has not taken advantage of the opportunities afforded by the Department to address his significant psychological impairment, he remains a danger to the children.

[¶11] For her part, the mother has made progress through her cooperation with the Department and her engagement in services for herself and N.O. Nonetheless, she has failed to accept responsibility for the situation that precipitated N.O.'s injuries and has attempted to cover for and defend the father, to the children's detriment. She denies that there has been any domestic violence despite specific statements made by the children about violence in the home and her agreement to the finding in the jeopardy order that the children had reported the father holding a gun to her head and assaulting another person. The mother denied that the drugs in the house were hers or the father's, but the children had spoken to others of needles and of the father bringing girls to the bedroom with needles and money. Although the father has exhibited significant untreated psychological issues, the mother says that she believes he is a good husband and father, and that she intends to remain with him.

6

[¶12] The children have been damaged by the parents' carelessness with the firearms and drugs in the home. N.O.'s life has been permanently altered because the bullet that entered her neck nicked her spinal cord and caused paralysis from the waist down. She has problems with her breathing and speech, has limited use of one arm and one hand, and attends school on a limited basis with her nurse but requires round-the-clock medical care and supervision. The two older children have said that they are afraid of their father and that they want to live with their grandparents, where they are much safer. The father lacks empathy for the children, and both parents have proved incapable of protecting and supervising them.

[¶13] The older children have been living safely with their loving maternal grandparents since October 31, 2013, and N.O. has been living with them since her release from the hospital in January 2014. The grandparents provide excellent care and are willing to adopt all three children. The grandmother works outside the home, and the grandfather devotes his time to the care of the children. He works directly with N.O.'s nurses; delivers N.O. to school and appointments; and is kind, patient, and loving with the children. Both the GAL and the children's therapist supported the termination of parental rights as being in the children's best interests.

[¶14] Based on its extensive findings, the court found that both parents were unwilling or unable to protect the children from jeopardy or take responsibility for

the three children in time to meet the children's needs, and that the father had failed to make a good faith effort to rehabilitate and reunify with the children. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv). The court found that termination of both parents' parental rights was in the best interest of the children. 22 M.R.S. § 4055(1)(B)(2)(a). The parents each appealed. *See* 22 M.R.S. § 4006 (2014); M.R. App. P. 2.

## II. DISCUSSION

[¶15] The parents do not contest the court's determination of the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a). They challenge only the court's findings of unfitness. *See id.* § 4055(1)(B)(2)(b).

A.  Parental Unfitness Determination Regarding the Father

[¶16] The father argues that, because the Department failed to arrange for him to receive acceptance commitment therapy, he was deprived of the opportunity to alleviate jeopardy and reunify with the children. The evidence demonstrates, however, that the Department's caseworker made concerted, reasonable efforts to locate an appropriate therapist for the father but that the father's behavior and resistance to neutral testing prevented him from obtaining treatment, even when a therapist qualified to provide the recommended treatment was located. Such evidence is sufficient to support a finding of a good faith effort by the Department to satisfy its obligations to the father pursuant to the rehabilitation and

8

reunification plan. *See* 22 M.R.S. § 4041(1-A)(A) (2014); *In re Denise M.*, 670 A.2d 390, 394 (Me. 1996). That evidence also supports the court's finding that the father failed to make a good faith effort to rehabilitate and reunify with the children, *see* 22 M.R.S. §§ 4041(1-A)(B), 4055(1)(B)(2)(b)(iv) (2014), especially when combined with the court's additional supported findings that the father lacks empathy for the children and has refused to acknowledge his responsibility for the harm that he has caused.

[¶17] The record also amply supports the court's finding that the father was unable or unwilling to take the steps necessary to gain empathy and to control his own behavior so that he could protect the children from jeopardy, and that those circumstances were unlikely to change within a time reasonably calculated to meet the children's needs. *See id.* § 4055(1)(B)(2)(b)(i). For a parent whose child suffered a debilitating injury because of the parent's carelessness with a loaded firearm to later express an intention to obtain another gun, without accepting responsibility for violence in the home and without obtaining treatment for significant mental health issues, demonstrates an unacceptable risk of additional injury to three already traumatized children, as the court found. These facts similarly demonstrate the father's inability or unwillingness to take responsibility for the children within a time reasonably calculated to meet their needs. *See id.* § 4055(1)(B)(2)(b)(ii).

[¶18]  Any one of the court's findings of unfitness, combined with the uncontested determination that termination of his parental rights is the best interests of the children, can support the court's termination of the father's parental rights.  *See id.* § 4055(1)(B)(2); *In re A.H.*, 2013 ME 85, ¶ 14, 77 A.3d 1012. Here, all three bases are supported by findings that the court reached by clear and convincing evidence as required by law.  *In re K.M.*, 2015 ME 79, ¶ 9, --- A.3d ---.

B.     Parental Unfitness Determination Regarding the Mother

[¶19]  The mother argues that she engaged meaningfully in all recommended rehabilitation and reunification services, has no guns in the home and no intention of ever allowing guns in the home again, and agreed that the father should engage in counseling.  She argues that she continued to reside with the father because he was ready and willing to engage in therapy and was waiting for a provider to be made available.

[¶20]  In making these arguments, the mother fails to acknowledge the father's own responsibility for his lack of therapeutic treatment, and she understates the significant risks to the children that the father poses in his current condition.  The father has blamed the mother for N.O.'s injuries, with the mother making efforts to cover for him.  As the court found, the mother has not acknowledged the serious risks posed by the father arising from his resistance to mental health treatment; his aggressive behavior; and his history with guns, drugs,

and domestic violence. The mother has also failed to accept responsibility for her own role in creating the circumstances in the home that precipitated N.O.'s injuries. These facts support the court's finding that the risk of harm to the children will persist if they are placed in the mother's care.

[¶21] The court therefore did not err in determining that the mother was unwilling or unable to protect the children from jeopardy or take responsibility for them within a time reasonably calculated to meet their needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii). Because the court did not err in its findings of unfitness and the mother does not contest the determination that termination of her parental rights is in the best interests of the children, we affirm the judgment terminating the mother's parental rights. *See id.* § 4055(1)(B)(2); *In re A.H.*, 2013 ME 85, ¶ 14, 77 A.3d 1012.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Randy G. Day, Esq., Garland, for appellant father

Joseph P. Belisle, Esq., Bangor, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2013-119
FOR CLERK REFERENCE ONLY