MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 9
Docket:        And-17-349
Submitted
  On Briefs:   January 11, 2018
Decided:       January 23, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE JAMES C.

PER CURIAM

[¶1]  The father of James C. III appeals from a judgment of the District Court (Lewiston, *Dow, J.*) terminating his parental rights pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i)-(ii), (iv) (2017).[1]  He argues that the court erred by finding by clear and convincing evidence that he is unfit as a parent pursuant to section 4055(B)(2)(b)(i), (ii), or (iv), and that it abused its discretion by determining that termination of his parental rights now is in the child's best interest.  The court's findings that he is unfit as a parent have support from competent evidence in the record, and the court acted well within its discretion by determining that termination of the father's parental rights is in the child's best interest.  We therefore affirm.

---

[1] The court terminated the mother's parental rights in the same judgment, and she did not appeal.

## I. BACKGROUND

[¶2]   The court's findings concerning the father's unfitness as a parent and its determination of the child's best interest were grounded in the following findings of fact from the termination hearing:

> As for the father, the jeopardy order identified "risks of serious physical harm, serious emotional harm and/or serious neglect due to the father's extensive mental health issues, patterns of domestic violence, impulse control issues, and anger management issues."

> . . . .

> In describing the incident that caused the mother to seek a temporary protection from abuse order against the father, the father blames the mother for the fact that he "love-tapped her" on the back of the head because "she pushed me to it. . . ."

> The father described his history of "snapping" in his relationship with the child's mother, with his own mother, and with former job supervisors.  He also complains about service providers "not doing their job."  In the father's view, [the local hospital] messed up medical care for [the child], necessitating the baby's move to [a specialized hospital in] Boston.  In the father's view, [his initial] case management [provider] didn't do its job, setting up med[ication] management services for him.  The [Court Ordered Diagnostic Evaluation (CODE)] evaluator failed to work with him, DHHS failed to make referrals for him and failed to return his calls, the visit supervisor failed to get in touch with him, the driver didn't do his job, etc.

> . . . [T]he father has developed no insight and has accepted no responsibility for the jeopardy he poses to the child.  His testimony was one of the most offensive examples of domestic violence

blaming, denying, justifying, and minimizing that the Court has ever heard. . . .

The father is unable to manage his own finances. He acknowledges a history of impulsive spending. His father is his representative payee for Social Security. . . .

At the time of trial, the father had only recently begun the process of setting up case management through the hospital. He was also looking for his own place, separate from his alcoholic mother. The visit supervisor found that [the] father had shown some limited progress in interacting with the child at visits. . . .

[The CODE evaluator] was not able to complete a full-scale evaluation of the father due to the father's failure to attend a second evaluation session, but . . . he determined that "[the father] does not possess the intellectual, emotional, or maturational skills necessary to parent a child."

. . . .

[The child] was born at [thirty-five] weeks['] gestation. He was born in Lewiston, but promptly transferred to hospitals in Portland, then Boston. He is under treatment of a nephrologist. He has complex dietary needs. His caregivers need training and skill, and caregivers must pay careful attention to the food preparation process. [The child] requires occupational therapy and speech therapy. He is in therapeutic foster care. The right permanent caregivers for [him] will be smart, attentive, patient, and nurturing.

[The child] absolutely needs permanency. He is not currently in a pre-adoptive placement, so termination of parental rights is necessary for him to be available to move toward the permanency of adoption.

## II. DISCUSSION

[¶3]  There is more than sufficient competent evidence in the record that supports the court's finding by clear and convincing evidence that, on three independent grounds, the father is unfit as a parent. *See In re K.M.*, 2015 ME 79, ¶¶ 5-6, 8, 10, 118 A.3d 812; *In re Michaela C.*, 2002 ME 159, ¶¶ 21-23, 809 A.2d 1245.

[¶4]  The father challenges the sufficiency of the evidence of his unfitness as a parent by pointing to evidence that he loves and shares a bond with the child.  He argues that he only needs more time to achieve reunification and that, given their bond, this additional time for reunification is in the child's best interest.  Contrary to the father's contention, the court did not err by finding that he has had an adequate time—slightly over a year—to engage in the required services, attempt to rehabilitate himself, and reunify with the child within a timeframe that was reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4052(2-A) (2017) (mandating that department file a termination petition after "a child has been in foster care for [fifteen] of the most recent [twenty-two] months.").  The Legislature clearly intended to expeditiously move a child toward permanency and to avoid needlessly

extended foster care placements.  *See* 22 M.R.S. § 4003(3), (4) (2017); *In re Alana S.,* 2002 ME 126, ¶¶ 20-24, 802 A.2d 976.

[¶5]  As for the child's best interest, we have said that a child's bond with his or her natural parent is "only one of *several* factors" and does not preclude a determination that terminating an unfit parent's rights is in that child's best interest. *In re Michaela C.*, 2002 ME 159, ¶¶ 26, 31, 809 A.2d 1245; *In re David G.*, 659 A.2d 859, 862 (Me. 1995).  This child has extensive medical needs that the court found will require "smart, attentive, patient, and nurturing" permanent caregivers; the father is unable to manage his own mental health and day-to-day needs, let alone those of his son.  The court acted well within its discretion in concluding that it is in the child's best interest to terminate the father's parental rights so as to allow for the child's adoption.  *See In re Joseph V.*, 2017 ME 172, ¶¶ 2-4, 169 A.2d 389; *In re Jeffrey E.*, 557 A.2d 954, 955-57 (Me. 1989).

The entry is:

Judgment affirmed.

Richard Charest, Esq., Lewiston, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Lewiston District Court docket number PC-2016-6
FOR CLERK REFERENCE ONLY