MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:      2019 ME 14
Docket:        And-18-198
Submitted
  On Briefs:   January 17, 2019
Decided:       January 24, 2019

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILD OF JONATHAN D.


PER CURIAM

[¶1]  Jonathan D. appeals from a judgment of the District Court (Lewiston, *Montgomery, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2017).[1]  We affirm the judgment.

[¶2]  On July 7, 2016, the Department of Health and Human Services filed a child protection petition when the child was approximately fifteen months old.  *See* 22 M.R.S. § 4032 (2017).  The petition alleged that the father is a registered sex offender with a history of serious untreated mental health issues and that the mother was unable to keep unsafe persons—including the father— away from the child.  On August 3, 2016, the Department requested a preliminary protection order.  The court (*Oram, J.*) held a hearing on the

---

[1]  The Department sought termination of the father's rights only.  The child has been in the care of the mother since September 1, 2017, and custody was returned to the mother on November 16, 2017.

Department's request on August 16, 2016, and entered an order transferring custody of the child to the Department the following day.

[¶3]  On November 1, 2016, the court (*Dow, J.*) held a jeopardy hearing and, after issuing findings of facts, entered an order relieving the Department of its obligation to pursue reunification efforts with the father based on the aggravating factor of his 2008 conviction of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2017), involving a two-year-old child.  *See* 22 M.R.S. §§ 4002(1-B)(A)(1), 4035(1), (2) (2017).  Despite the cease reunification order, the court ordered the Department to provide the father with sex offender treatment and individual counseling.

[¶4]  On January 25, 2018, the Department filed a petition for termination of the father's parental rights.  The court (*Montgomery, J.*) held a hearing on the petition on April 10, 2018, and, on May 14, 2018, issued an order granting the Department's petition to terminate the father's parental rights.  Based on the testimony presented at the hearing and other competent evidence in the record, the court found by clear and convincing evidence that termination of the father's parental rights is in the best interest of the child because he is unwilling or unable to protect the child from jeopardy or take responsibility for

the child within a time which is reasonably calculated to meet the child's need. 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii).

[¶5] The court based its decision on the following factual findings, all of which are supported by competent evidence in the record.

> As a very young child, [the father] was subjected to egregious . . . abuse as well as neglect. He has been diagnosed with a variety of mental illnesses, including schitzo-affective disorder, bipolar disorder, dissociative identity disorder, PTSD, and depression. This extended and severe childhood trauma has likely caused and/or exacerbated [the father's] mental illness and demonstrable anger.

> In 2008, [the father] was convicted of Class B Unlawful Sexual Contact and sentenced to five years with all but two years suspended and six years of probation. His crime involved sexual contact with a two-year-old girl while babysitting her. . . .

> . . . .

> As for sex offender treatment, [the father's] engagement has been sporadic over the course of the last six or so years. Despite repeated attempts to engage in the therapy, he has expressed a lack of confidence in the efficacy of such treatment and at least twice refused to sign treatment contracts, which is a required step in the treatment.

> . . . .

> . . .[The father's] failure to wholeheartedly embrace and engage in treatment has increased the significant safety risks he poses to [the child] in a parenting role.

> . . . .

. . . [T]he risk to [the child] from [the father] for sexual abuse remains high as he refuses to take full responsibility for the conduct leading to his sex offense conviction. His claim that the conviction resulted from him having a seizure while caring for the child victim is not only not credible, it shows a complete refusal to take one of the most important steps toward recovery, which is acknowledgment of his own action. As long as [the father] attempts to convince himself and others that any sexual touching of that child victim was outside of his own control, he will be unable to make the changes necessary to reduce the risk of harm he poses to young children.

[The father] faces great challenges as he attempts to address his very serious mental health conditions and to take responsibility for his past actions. He remains an untreated sex offender who poses a threat of sexual abuse to [the child]. Since [the mother] and DHHS refuse to grant permission, he is statutorily prohibited from having contact with [the child]. . . . In addition, [the father] would be unable to protect [the child] from Jeopardy as [the child] would be subject to the threat of sexual abuse by him.

. . . .

[The child] has not had any contact with [the] father since [the child] was about 15 months old. [The child] is now three years old . . . . The record evidence supports the conclusion that any future contact with [the father] would be akin to granting contact with a stranger.

Moreover, [the father] has historically demonstrated a familiarity with the court system and its processes. In the first 15 months of [the child's] life, [the father] estimated that he and [the mother] had appeared in the Lewiston District Court 20 to 30 times. . . . The chance of a successful reunification between [the mother and the child] is possible only if [the father] is prohibited from disrupting [the child's] life with [the] mother. Given [the father's] demonstrated inclination to excessively engage the court system, it is likely that without a termination of his parental rights,

he will continue to use the system in a way that is disruptive to [the child's] progress.

[¶6]   The father timely appealed.  *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2B(c).  On September 21, 2018, pursuant to the process outlined in *In re M.C.*, 2014 ME 128, ¶ 7, 104 A.3d 139, counsel for the father filed a brief containing the factual and procedural history of the case, stating that she believed that there are no meritorious issues for appeal.  Counsel also filed a motion for an enlargement of time to allow the father to personally file a supplemental brief.  Although we granted the father an enlargement of time, he did not file a supplemental brief.

[¶7]   Based on the court's findings of fact, all of which have evidentiary support, the court did not err in determining that the father remains unable to protect the child from jeopardy or take responsibility for the child within a time that is reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii); *see also In re Child of Gustavus E.*, 2018 ME 43, ¶ 8, 182 A.3d 153*; In re Thomas D.,* 2004 ME 104, ¶ 21, 854 A.2d 195; *In re Alexander D.*, 1998 ME 207, ¶ 18, 716 A.2d 222.  Nor did the court err or abuse its discretion in determining that termination of the father's parental rights was in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a); *see also In re A.H.*,

2013 ME 85, ¶ 16, 77 A.3d 1012; *In re Marcus S.*, 2007 ME 24, ¶ 11, 916 A.2d 225.

The entry is:

Judgment affirmed.

---

Heidi M. Pushard, Esq., Lewiston, for appellant Father

The Department of Health and Human Services did not file a brief

Lewiston District Court docket number PC-2016-50
FOR CLERK REFERENCE ONLY