MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:      2019 ME 31
Docket:        Som-18-376
Submitted
  On Briefs:   February 20, 2019
Decided:       February 28, 2019

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF CHRISTOPHER S.

PER CURIAM

[¶1]   Christopher S. appeals from a judgment of the District Court (Skowhegan, *Benson, J.*) terminating his parental rights to two of his children[1] pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv) (2018).[2]  He challenges the court's determination that termination of his parental rights provides the children with "permanency" and is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a).  We affirm the judgment.

---

[1]  The father has an older child who was the subject of a separate child protection proceeding.  He also has two other children who are now adults.

[2]  The Department sought termination of the father's rights only.  The children have been in the sole custody of the mother since this action was commenced.

## I. BACKGROUND

[¶2]   The following facts, which are supported by competent record evidence, are drawn from the court's findings and the procedural record. *See In re Children of Corey W.*, 2019 ME 4, ¶ 2, --- A.3d ---.

[¶3]   On December 4, 2017, the Department of Health and Human Services filed a petition for a child protection order and preliminary protection order, requesting that the court place the children in the sole custody of the mother.[3]   *See* 22 M.R.S. §§ 4032, 4034(1) (2018).   The petition alleged that between April of 2009 and January of 2016 the Department received many reports of concerns that the father had been physically and emotionally abusive and that the parents were not meeting the children's medical, educational, dental, and mental health needs.   The court (*Benson, J.*) issued a preliminary protection order and placed the children in the custody of the mother.

[¶4]   In January of 2018, the court entered an agreed jeopardy order against the father based on "serious abuse and neglect [of the children], as

---

[3]  Although not contained in its findings, the court was presented with testimony that in 2016, prior to the commencement of this action, the Department instituted a "safety plan" with the mother, under which she agreed to temporarily move with the children to a friend's home while the Department attempted to assist the father in stabilizing his mental health.  After the father agreed to take medication and began to participate in medication management, the mother and the children returned to the family home.  In late 2017, however, the father threatened to assault the mother, and the mother and the children, with assistance from the Department, moved out of state.

evidenced by the threat of serious harm posed by the father's unmanaged mental health problems and domestic violence, as well as his deprivation of adequate food, clothing, shelter, supervision, care, and education." *See* 22 M.R.S. § 4035 (2018). Although the court also found jeopardy as to the mother based on past concerns about her parenting capabilities and the risks posed by the father, the court ordered that the children remain in her custody. The jeopardy order required the father to participate in a court-ordered diagnostic evaluation,[4] dialectical behavior therapy, and medication management.

[¶5] Several months later, the father moved for the court to order the mother to allow him to have contact with the children. After a contested hearing, the court denied the motion, and shortly thereafter the Department petitioned for termination of his parental rights. *See* 22 M.R.S. § 4052 (2018). In August of 2018, the court held a hearing on the petition, where the mother, two departmental caseworkers, and the paternal grandmother testified. The father chose not to testify. The court subsequently entered a judgment

---

[4] At the termination hearing, the court was presented with evidence that in February of 2018 the father underwent the evaluation. The psychologist who conducted the examination diagnosed the father with antisocial personality disorder and polysubstance use disorder, and concluded that the father would be "very unlikely" to "provide a safe and stable environment for a child even in a highly structured and supportive environment" and that the father's "prognosis for treatment compliance and change is poor."

4

terminating the father's parental rights. In the judgment, the court found by clear and convincing evidence that the father was unwilling or unable to protect the children from jeopardy and was unwilling or unable to take responsibility for the children, and that these circumstances were unlikely to change within a time that is reasonably calculated to meet the children's needs; and that he had failed to make a good faith effort to rehabilitate and reunify with the children. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv). The court also determined that termination of the father's parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶6] The court made the following factual findings, all of which are supported by competent record evidence. *See In re Child of Jonathan D.*, 2019 ME 14, ¶ 5, --- A.3d ---.

> Between this case and a prior one, the Department has been making every effort to work with [the father] for years. It has offered him access to all the tools he could possibly have required to rehabilitate and reunify, but, for whatever reason, he has refused to avail himself of the services offered. Finally, he has run out of time to begin trying in time to meet his children's need for permanence and stability.
>
> . . . The Department has waited patiently for [the father] to avail himself of services, any services, and only now, at the eleventh hour, does he appear to be making a half-hearted effort to do so. There is nothing more the Department can do in discharging its responsibilities under Title 22 when a parent like [the father]

whose serious, unmanaged mental health problems threaten child safety simply won't participate.

To date, the Department's repeated referrals of [the father] to rehabilitative services have come to nothing. The last counselor he actually participated with quit out of fear for her own safety earlier this year after he made chilling remarks about "body bags," and it has been months since he participated in any of the services outlined in the agreed Jeopardy Order. Given that background, the Court simply cannot seriously conclude that there is any real likelihood that he will follow through with the counseling that he has not even started yet. . . . Given his staunch refusal to engage in services, it is unsurprising that his mental health status appears to have worsened throughout the life of this case.

. . . .

. . . [T]he last time [the father] testified, [] he did so in a hostile and frightening manner that strongly suggested he was "about to attack the people around him." . . . [H]e was not then "engaged in any of the required or recommended services . . . ." He has made but the faintest of gestures toward that end since that time, and as the guardian *ad litem* has reported he has continued intermittently to publish threatening commentary on Facebook. The Court found after his last testimony that "until he stabilizes, contact between the father and the children would subject them to an unacceptable level of risk to their wellbeing and would, therefore, be contrary to the best interests." That finding is just as accurate today as when it was made, and it is not possible on this record to envision a time in the future when it would be inaccurate.

. . . .

. . . [T]he court finds (again by clear and convincing evidence) that termination of parental rights is in the best interest of both children. As their guardian *ad litem* has recommended, they need safety, permanence, and stability.

> . . . [The father] must be legally excised from this family to keep the children safe and afford them permanency. Without the treatment he needs, he represents a constant and extreme threat to their welfare. He is highly unlikely to successfully complete such treatment in the foreseeable future, and [the children] have already been subjected to far too much of his dangerous combustibility.

The court ultimately ordered that the children remain in the mother's custody but that the father's parental rights would be terminated. The father filed a timely appeal from the judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. 2B(c)(1).

## II. DISCUSSION

[¶7]  The father does not challenge the court's factual findings or its determination of parental unfitness, but argues only that the court erred by concluding that termination of his parental rights will provide the children with "permanency" and is in their best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a). "We review the court's factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the child's best interest for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re Children of Nicole M.*, 2018 ME 75, ¶ 12, 187 A.3d 1 (alteration, citations, and quotation marks omitted).

[¶8]  Once a court determines that a parent is unfit, it must determine whether termination of the parental rights is in the child's best interest. *See*

22 M.R.S. § 4055(1)(B)(2)(a); *In re Child of Domenick B.*, 2018 ME 158, ¶ 9, 197 A.3d 1076. In doing so, the court is required to consider "the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home and the child's physical and emotional needs." 22 M.R.S. § 4055(2) (2018); *see also In re Child of Mercedes D.*, 2018 ME 149, ¶ 21, 196 A.3d 888. "Also relevant to the best interests determination is the harm the children may suffer if the parent's rights are not terminated, as well as the children's need for permanence and stability." *Adoption of Isabelle T.*, 2017 ME 220, ¶ 49, 175 A.3d 639. Therefore, even though parental unfitness and a child's best interest are separate elements of a termination case, the court's *findings* that bear on parental unfitness may also be relevant to the question of whether termination is in the child's best interest. *In re Ashley A.*, 679 A.2d 86, 89 (Me. 1996).

[¶9] Contrary to the father's assertion, the court was presented with considerable evidence regarding the children's best interests; much of that evidence was also probative on the issue of the father's parental unfitness. As is reflected in the court's supported findings, the record includes evidence that the father has refused to accept and participate in services that would give him

the opportunity to rehabilitate and reunify with his children, and there is no reason to expect that he will become receptive to meaningful intervention; that, by all accounts, as a result of his unwillingness to participate in services, his mental health has deteriorated during the pendency of this case; that his conduct toward those around him is volatile, unpredictable, vindictive, and threatening—even in a courtroom setting; and that the prognosis for treatment compliance and improvement in his mental health is poor. These and other findings, which are germane to the assertion that he is parentally unfit, also provide support for the court's conclusion that the risks posed by the father and his refusal to meaningfully participate in services constitute "a constant and extreme threat" to the welfare of the children, who "have already been subjected to far too much of his dangerous combustibility." In short, the evidence provided the court with considerable support for the conclusion that termination of the father's parental rights is in the children's best interests.

[¶10]  Finally, the father argues that termination of his parental rights is not necessary to promote the children's best interests because the children could remain in the mother's care and custody without terminating his parental rights and that the court therefore should have issued a parental rights and responsibilities order rather than a termination order.  *See* 22 M.R.S.

§ 4036(1-A) (2018). The father's contention, however, does not account for the continuing and escalating risk that the court found he poses to the children because of his choice not to engage in services and interventions that would have given him the opportunity to try to become a safe and nurturing parent. Further, although the court acknowledged that it may not be altogether common to terminate one parent's rights to a child while preserving the other parent's parental rights, the court concluded that the circumstances of *this* case warranted that outcome. Given the evidence presented to the court, this determination was not erroneous. *See In re Child of Emily K.*, 2018 ME 79, ¶ 10, 187 A.3d 595 (affirming a judgment terminating the parental rights of one parent while preserving the parental rights of the other parent); *In re Child of Jonathan D.*, 2019 ME 14, ¶¶ 1 n.1, 7, --- A.3d --- (same).

[¶11] For these reasons, the court did not err or abuse its discretion in determining that the termination of the father's parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

Wayne Doane, Esq., Exeter, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2017-60
FOR CLERK REFERENCE ONLY