MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 56
Docket:        Pen-18-441
Submitted
  on Briefs:   April 9, 2019
Decided:       April 16, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF PETER T.

PER CURIAM

[¶1]  Peter T. appeals from a judgment of the District Court (Bangor, *Jordan, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).[1]  He challenges only the court's determination that termination of his parental rights is in the child's best interest.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts, which are supported by competent record evidence, are drawn from the court's judgment and the procedural record.  *See In re Children of Christopher S.*, 2019 ME 31, ¶ 2, ---A.3d---.

---

[1]  The court also entered an order terminating the mother's parental rights to the child after the mother consented to the termination.  *See* 22 M.R.S. § 4055(1)(B)(1) (2018).  She does not appeal from that judgment.

[¶3]  In April of 2016, the Department of Health and Human Services filed a petition for child protection and preliminary protection orders on behalf of the child, who was then three years old.  *See* 22 M.R.S. §§ 4032-4034 (2018).  The petition alleged that the father had been convicted of unlawful sexual contact with a child under the age of 12, *see* 17-A M.R.S. § 255-A(1)(F-1) (2018), and posed an immediate risk of serious harm of sexual abuse to his own child.  The court (*Mallonee, J.*) issued a preliminary protection order and placed the child in the Department's custody.

[¶4]  The following August, the court (*Jordan, J.*) entered an agreed-upon order finding jeopardy as to the father based on his sexual assault conviction, his history of diagnosed mental health conditions, and a concern about his anger.  *See* 22 M.R.S. § 4035 (2018).  The order required the father to participate in several types of services and interventions, and allowed him supervised visitation with the child "as deemed appropriate by DHHS, provided it is in [the child's] best interest."  The court held three judicial review and permanency planning hearings from December of 2016 through May of 2017, *see* 22 M.R.S. §§ 4038, 4038-B (2018), and after each hearing issued a consent order continuing the terms of the jeopardy order.

[¶5]  In January of 2018, the court held a fourth judicial review hearing, where the father contested the Department's assertion that jeopardy had not been alleviated.  In an order entered after the hearing, the court found that the child whom the father had sexually assaulted, resulting in the conviction, was a family member.  The court further found that the father's explanation of the incident resulting in that conviction—that his sexual assault of the child was "accidental" and that he had "confused [the victim] for his adult wife"—was "completely unbelievable" and that "[s]uch minimization and evasion, after four years of sex offender therapy, convinces the Court that he is still a danger to children."  The court concluded that the father continued to pose a risk of reoffending and that "jeopardy as to [the father] continues unabated."

[¶6]  In March of 2018, the Department filed a petition to terminate the father's parental rights.  The following August, the court held a consolidated hearing on termination and judicial review, where the court heard testimony from the child's departmental caseworker, the guardian ad litem, and the father.  The caseworker testified that, to her knowledge, the father had not participated in sex offender treatment or any other services to alleviate the jeopardy found by the court at the January 2018 judicial review hearing.  The father conceded that jeopardy had not been resolved but requested that the

4

court give him six additional months "to show that things are different and that his situation would permit . . . a trial placement."

[¶7]  At the conclusion of the hearing, the court orally granted the Department's termination petition.  The court determined that the father was parentally unfit because he was neither able to protect the child from jeopardy nor able to take responsibility for the child, and would be unable to do either within a time reasonably calculated to meet the child's needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii)—circumstances that the court noted were not contested by the father.  The court also concluded that termination of the father's parental rights is in the child's best interest, *see id.* § 4055(1)(B)(2)(a), because, absent termination, the delay in creating permanency for the child would be too great.  More specifically, the court found that the father's request for an additional six months for him to engage in therapy, to be followed by months of a trial home placement, would result in "arguably at least another year before [there would be] any chance of permanency for a child who has spent almost half her life in State custody."

[¶8]  On October 10, 2018, the court entered a written judgment terminating the father's parental rights, in which the court found the following

additional facts, which are supported by competent record evidence. *See In re Child of Jonathan D.*, 2019 ME 14, ¶ 5, 200 A.3d 799.

> [The father] completed sex offender treatment and probation[,] . . . participated in mental health and case management services[,] . . . maintained safe, stable housing[,] . . . participated in a CODE, the results stating that the chance of [the father] reoffending is statistically low[;] however, he exhibits an extraordinary level of minimization and denial after four years of treatment. . . .
>
> [The father] has been unable to make changes since the January 31, 2018 Judicial Review Order and the filing of the Petition for Termination of Parental Rights.
>
> [The child] has been in the custody of DHHS for over two years. It would be in [the child's] best interest that [the petition for the] termination of parental rights of [the father] be granted in order to achieve permanency.

[¶9] The court also reiterated its determinations, by clear and convincing evidence, that the father was parentally unfit and that, in order for the child to be afforded permanency, termination of his parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii). On the same day, the court also issued a post-termination review order establishing adoption as the permanency plan for the child. The father filed a timely appeal of the termination judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10]  The father asserts on appeal that the court erred by concluding that the child's best interest would be served by terminating the father's parental rights, contending that "[i]t is crucial [the child] suffer no more traumas, no more losses, and that [the] father not be removed from [the child's] life absent compelling circumstances."  Contrary to this contention, the evidence supports the court's best-interest determination.[2]

[¶11]  "We review the court's factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the child's best interest for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens." *In re Children of Christopher S.*, 2019 ME 31, ¶ 7, ---A.3d--- (quotation marks omitted).  "[T]he best interest determination does not occur in a vacuum, but rather is part of an ultimate disposition that must account for the congruence of the judicial decisions . . . associated with it," *In re Thomas H.*, 2005 ME 123, ¶ 30, 889 A.2d 297, including the court's decision after the contested judicial review approximately

---

[2]  The father does not challenge the court's determination of parental unfitness.  Any such challenge would be unavailing in any event because the record evidence supports that determination. *See In re Children of Anthony M.*, 2018 ME 146, ¶ 8, 195 A.3d 1229 (stating the standard of review of a court's determination of parental unfitness).

eight months earlier. Moreover, although a child's best interest and parental unfitness "are separate elements of a termination case, the court's findings that bear on parental unfitness may also be relevant to the question of whether termination is in the child's best interest." *In re Children of Christopher S.*, 2019 ME 31, ¶ 8, ---A.3d--- (emphasis omitted).

[¶12] Here, with support in the record, the court found that, because the father had not successfully rehabilitated and alleviated the risk he poses to the child in the more than two years since the child protection action was commenced, he would not be able to provide the child with a permanent placement within a time reasonably calculated to meet the child's needs. *See In re Children of Anthony M.*, 2018 ME 146, ¶¶ 13-15, 195 A.3d 1229. The father's lack of participation in any sex offender treatment or other counseling services since the January 2018 contested judicial review hearing—where the father continued to minimize his culpability for sexually assaulting a child even after being convicted and completing four years of sex offender treatment—supports the court's conclusion that the father was still unsafe to parent the child and would not be able to safely care for the child within the statutory timeframe.

[¶13]  At the time of the termination hearing, the child was five years old and had been in departmental custody for nearly half of her life.  As the court was entitled to conclude, the substantial additional delay proposed by the father—particularly when over a period of years he had not rehabilitated to a degree where he could safely care for the child—would be contrary to the Legislature's intent of providing for the termination of parental rights where doing so would "[e]liminate the need for children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family" and "[p]romote the adoption of children into stable families rather than allowing children to remain in the impermanency of foster care."  22 M.R.S. § 4050(2)-(3) (2018).

[¶14]  On this record, the court did not err or abuse its discretion by concluding that the best interest of the child would be served, not by prolonging the impermanence and uncertainty of foster care, but by terminating the father's parental rights so that the child can be placed in a stable and permanent setting.  *See id.* § 4055(1)(B)(2)(a).

The entry is:

Judgment affirmed.

Robert E. Meggison, Esq., Belfast, for appellant father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number PC-2016-21
FOR CLERK REFERENCE ONLY