MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 198
Docket:        Yor-17-194
Submitted
  On Briefs:   September 27, 2017
Decided:       October 5, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE HOPE H. et al.


PER CURIAM

[¶1]  The mother and father of Hope H., Jason J., and Kristopher J. appeal from the judgment of the District Court (Springvale, *Foster, J.*) terminating their parental rights to their twin sons pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i)-(ii), (iv)[1] (2016).  The mother also appeals from the same judgment terminating her parental rights to her daughter pursuant to the same statutory provisions.  The parents both challenge the sufficiency of the evidence to support the court's finding of at least one ground of parental unfitness and the court's determination that termination of their parental rights was in their children's best interests.  The mother also challenges the court's exclusion of the children's grandmother's testimony as hearsay.

---

[1]  The court found, as to the father only, a failure "to make a good faith effort to rehabilitate and reunify with the children pursuant to 22 M.R.S. § 4041."

[¶2]  Contrary to the parents' contentions, competent evidence in the record supports the court's findings that the parents are unwilling or unable to protect the children from jeopardy and otherwise take responsibility for the children within a time reasonably calculated to meet the children's needs and that the father has failed to make a good faith effort to rehabilitate and reunify with the children pursuant to 22 M.R.S. § 4041 (2016).  The court appropriately exercised its discretion in concluding that termination of their parental rights was in the children's best interests.  Furthermore, the record shows that the court did not abuse its discretion in excluding the grandmother's proffered testimony regarding "[s]ome of the stories that Hope has made up."  We affirm the judgment.

## I.  BACKGROUND

[¶3]  Clear and convincing evidence in the record supports the court's findings that the mother and the father are unable or unwilling to take responsibility for the children and protect them from the risks of harm that have persisted since the court issued the jeopardy order.  22 M.R.S. § 4055(1)(B)(2).

[¶4] The initial jeopardy order was based upon the parents'

> inability to appropriately address their boys' behavioral challenges and mental health needs; emotional harm due to [their] inability to obtain and maintain adequate, sanitary and stable housing for [themselves] and the children; and the risk of harm based on the mother's lack of support around her daughter['s] . . . reports [and the father's] sexually inappropriate communications with her.
> . . . .
> . . . Jeopardy also consists of a risk of harm to the boys[ ] based on [the father's] conduct to their half-sister.

[¶5] Until July 2016, approximately a year and a half after her daughter's disclosure of the father's sexually inappropriate communications, the mother maintained that the daughter's disclosures were the product of a delusion and insisted on having her evaluated for a delusional disorder. Despite her daughter's consistent statements and medical examinations that ruled out the possibility that her daughter had any disorder, at the termination hearing the mother maintained doubts about the truth of her daughter's disclosures regarding the father. The father continues to deny that anything happened, although he acknowledges the court's finding to the contrary and that his reunification plan requires that he "take responsibility for his actions and how they have impacted his children and their safety and well[-]being."

[¶6] Although in July 2016 the mother claimed that she separated from the father to demonstrate her commitment to getting her children back, the

4

mother remains living with a friend in a one-bedroom apartment in the same building as the father. Competent evidence in the record provides the court with a firm basis to find that the parents will not take responsibility for their children's needs or protect them from jeopardy. As the court found:

> The court is not persuaded that [the mother] and [the father] are truly and finally separated. Certainly, it is not what [the father] wants and [the mother] has not offered a convincing rationale for what prompted her to terminate a ten-year relationship. As recently as . . . October 5, 2016 [the mother] said she needed to talk with [the father] about bringing a special treat for the children. As she was leaving, she told the children she would give [the father] a hug and a kiss for them. The mechanics of the separation, with the two remaining in the same building but on different floors, underscores [the mother's] lack of commitment to the action as well as its unsustainability. [The mother] remains dependent on others, most notably [the father]. She has no employment, no income, and no driver's license. It is unclear how she is supporting herself but the Court suspects [the father] assists her to a greater degree than he acknowledged at trial.
>
> If the parties are, in fact, still a couple, clearly [the daughter] cannot return to her mother's care. If the parties are really separated, neither has the ability to manage the behaviors of their sons nor to meet their physical, emotional, behavioral and educational needs. [The father] has engaged in virtually no services designed to assist him to better parent his children; [the mother] has attended services but shows no gains in her ability or insight into her children's needs.

[¶7] The court relied on the following testimony of the GAL to summarize its analysis of the children's best interests:

> We are talking about this window of opportunity, if you will, where [the children] get to have something, they get to have an education, they get to have some stability, they get to have some reasonable feeling of safety. With all that is unknown about their future in the foster care system it is, at least in my opinion, less unknown as to what their future would look like if they were to immediately return to their parents. . . . It is in the best interests of all three of the children to free them of the uncertainty of whether they might return to a parent or parents and begin the process of securing appropriate, loving families for adoption.

*See* 22 M.R.S. § 4055(1)(B)(2)(a), (3).

## II. DISCUSSION

[¶8] We review the court's findings of fact on parental unfitness for clear error and its conclusion that termination of parental rights was in the children's best interests for an abuse of discretion. *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260 ("Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence.").

[¶9] The mother and the father argue that the four months from the time of the jeopardy order to the filing of the petition to terminate their parental rights was an inappropriately expedited time frame and that the court failed to adequately credit their incremental gains toward fulfilling their reunification plans. Despite any progress the parents have made toward reunification, there remain significant deficits in their housing; their acknowledgement and

6

management of the risk that the father could further harm the children; and their ability to meet the children's significant emotional and mental health needs.

[¶10]  Marginal progress toward reunification and a simple desire to remain parents is not enough to ameliorate jeopardy and meet the children's needs.  *See In re Alana S.*, 2002 ME 126, ¶¶ 13, 21-23, 802 A.2d 976 (affirming termination despite parents' significant progress toward reunification where full reunification was not possible in the foreseeable future).  Expedited permanency planning, which occasionally presents a challenge to parents' abilities to overcome their parenting deficits, furthers the Legislature's intent to serve children's interests in promptly moving toward permanency.  22 M.R.S § 4050 (2016); *In re Jamara R.*, 2005 ME 45, ¶ 22, 870 A.2d 112, *overruled in part on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.  Here, the timeline for termination of parental rights was proper given the circumstances of the case, the children's best interests, and the intent of the child protection statute.

[¶11]  The mother also contends that the court abused its discretion by excluding as hearsay the maternal grandmother's testimony about an instance when the daughter claimed that she suffered a physical harm that was later

disproven by a medical examination. She argues that statements by the daughter's former school officials, pediatrician, and Massachusetts child protection workers were non-hearsay statements offered only to show their effect on the listeners—the grandmother and mother—and thus explain why they believed the daughter had a predisposition to untruthfulness. The mother complains that the trial court's inquiry into the purpose for offering the grandmother's testimony "foreclosed this line of testimony as hearsay."

[¶12] The grandmother's testimony, which recited information she heard from others related to specific instances of the daughter's allegedly untrue statements,[2] constituted inadmissible hearsay and the court appropriately expressed an intention to exclude it. M.R. Evid. 801(c)(2).

[¶13] The mother argues on appeal that the grandmother's testimony was admissible to prove its effect on the listeners' state of mind. *See* Field & Murray, *Maine Evidence* § 801.3 at 427-28 (6th ed. 2007). This argument departs from the apparent initial purpose for this testimony, which was to prove that the daughter was not always credible by offering the hearsay statements of third parties who refute the statements made by her. *Cf. State v.*

---

[2] The testimony about specific instances of the daughter's conduct is also not admissible as character evidence of the daughter's untruthfulness. *See* M.R. Evid. 608(b); *State v. Wells*, 423 A.2d 221, 225 (Me. 1980).

*Harrigan*, 662 A.2d 196, 197-98 (Me. 1995). Therefore, the court correctly sustained the Department's first hearsay objection to the initial proffer, insofar as it was offered for its truth. Contrary to the mother's assertion that the court excluded the grandmother's testimony, which was ostensibly tendered for the sole purpose of showing the effect that the third party's statements had on the mother's and grandmother's states of mind,[3] the court actually allowed her to proceed on that basis. *See* M.R. Evid. 801(c)(2). The fact that the court observed that the testimony, as offered and allowed in the second instance, had limited value does not constitute an exclusion of the evidence. The weight afforded to the evidence is soundly within the discretion of the trier of fact. *See In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105.

The entry is:

Judgment affirmed.

---

[3] The court notes, in allowing the second portion of the testimony, that "I'll allow you to do it but I don't think it has much value."

Carina Cilluffo, Esq., Portland, for appellant mother

Peter M. McGee, Esq., South Portland, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Springvale District Court docket numbers PC-2015-02 and PC-2015-03
FOR CLERK REFERENCE ONLY