MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:       2018 ME 93
Docket:         Fra-18-41
Submitted
  On Briefs:    June 27, 2018
Decided:        July 10, 2018

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

# IN RE CHILD OF EVERETT S.

PER CURIAM

[¶1] The mother and father appeal from a judgment of the District Court (Farmington, *Carlson, J.*) terminating their parental rights to their son pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2017). Both parents challenge the sufficiency of the evidence supporting the court's findings of unfitness and best interest as well as the court's discretionary determination that the termination of their parental rights was in the child's best interest. Because the evidence supports the court's factual findings and discretionary determinations, and because the court did not abuse its discretion in determining that termination was in the child's best interest, we affirm the judgment.

2

## I. BACKGROUND

[¶2]  After a two-day termination hearing, the court issued a judgment containing the following findings of fact, which are supported by the record. *See In re Child of James R.*, 2018 ME 50, ¶ 2, 182 A.3d 1252.

> [The parents] are a married couple . . . who have had extensive involvement with DHHS child protection services for approximately twenty years off and on.  The issues have largely been unsanitary living conditions and neglect.
>
> . . . .
>
> On May 11, 2016, the [c]ourt entered a Jeopardy Order with respect to [the child,] which found him to be in circumstances of jeopardy in the custody of his parents based on the threat of serious harm, [and the] deprivation of adequate food, shelter, clothing, supervision and education.
>
> . . . .
>
> After DHHS took custody of [the child], he was placed with his older half-brother and his wife.  [The parents] were able to buy the trailer that they had been renting and told DHHS that they were going to make improvements that would remedy the unsanitary living conditions. They claimed that their former landlord had essentially contributed to the unsanitary living conditions and it was not their fault.
>
> Over the next few months, living conditions in [the] parents' home appeared to be getting better.  Both [of the parents] were in counseling with counselors that they had been seeing for a number of years.
>
> . . . .

[The parents] both completed [Court Ordered Diagnostic Evaluations (CODE)] .... Given the history of DHHS child protection involvement for the same issues and [the mother's] mental state, [the CODE evaluator] does not believe that [the mother] can make sufficient changes that could reduce the risk of further incidences of child maltreatment. She tends to blame others for the circumstances that have caused [the child's] removal, which indicates a lack of motivation to make any appreciable changes . . . .

[The father] was unable to identify any of DHHS's concerns during his CODE evaluation with the exception of a lack of cleanliness which he and [the mother] blamed on their landlord. His IQ score . . . indicated an intellectual disability. . . .

[The CODE evaluator] concluded that:

'the mere presence of an intellectual disability does not necessarily guarantee that a parent will be neglectful or abusive. However, in this case, it appears that [the father's] limited ability to conceptualize the big picture situation at home has left him pretty ineffective in addressing issues such as cleanliness of the household or management of his older son's aggressive behavior toward his younger brother. Therefore, this is a case where cognitive limitation can reasonably be seen as a risk factor. . . .'

. . . .

[The child] has expressed that he wants to return home to his parents, although he was excited about the prospect of going to [the residential facility]. In June 2017, the [permanency caseworker] visited the [parents'] home and saw clutter in the home, including [the child's] bedroom blocked by large items, a dirty kitchen, a hole in the hallway floor, a hole in the shower and [what appeared to be] feces around the toilet. She did not believe

that jeopardy had been ameliorated or that the parents were capable of meeting [the child's] needs.

....

[The mother] does not believe that DHHS has helped [her] and [her husband] with the unsanitary living conditions, particularly ridding the home of cockroaches.

. . . [The father] believes that he and [the mother] could safely supervise [the child] in their home. He did indicate that while he and [his wife] were trying to make improvements to their trailer, he had given up on it and did not want to do any further work.

[The child's] Guardian ad Litem . . . believes that it is not in the child's best interest to return home. She believes that [the child] needs to know where he is going and that he needs stability and permanency.

There were reunification and rehabilitation plans in this case that were done in March 2016 [and] July 2016[,] and three judicial review orders.

[The child] is a very high needs child who requires caregivers/parents who are highly skilled, focused on his needs, able to make good judgments, have the ability to keep him safe and can provide a clean, stable home. [The child] has been in DHHS custody since May 2016.

Based on [the parents'] own limitations, their failure to make the changes in their living environment and their lives that are necessary to keep [the child] safe and which are unlikely to change as well as the high needs of this child, the [c]ourt finds, by clear and convincing evidence, that they are unwilling or unable to protect their child from jeopardy and these circumstances are unlikely to change within a time reasonably calculated to meet his needs and they are unwilling or unable to take responsibility for

their child within a time that is reasonably calculated to meet his needs.

The [c]ourt further finds that it is in [the child's] best interests that [the mother's] and [the father's] parental rights be terminated. The [c]ourt bases this on [the child's] age, his . . . needs and the fact that he has been in DHHS custody for twenty months and needs stability and permanency. His emotional deterioration is a sign that he is unable to move forward due to his uncertainty as to his future.

## II. DISCUSSION

[¶3] We review the court's factual findings on parental unfitness for clear error and its determination that the termination of parental rights was in the child's best interest for an abuse of discretion. *In re Hope H.*, 2017 ME 198, ¶ 8, 170 A.3d 813.

A.     Unfitness Findings

[¶4] The mother and the father both argue that the court's findings are unsupported by the record because the Department failed to provide the services recommended by the psychologist who performed the CODE for each parent. *See* 22 M.R.S. § 4041 (2017). Further, the parents contend that the Department failed to provide certain services outlined in the reunification plans.

[¶5] We consider allegations of the failure of the Department to provide reunification services as a part of the determination of parental unfitness. *See,*

*e.g.*, *In re Emma S.*, 2018 ME 8, ¶ 5, 177 A.3d 632. Contrary to the parents' contentions, the court's findings are supported by the record because the Department created reunification and rehabilitation plans, provided social worker services, and made referrals to other services throughout the nearly two decades that the Department has been involved with this family. In addition, supported by the CODE report for each parent, the court found that it is unlikely that the mother "can make sufficient changes that could reduce the risk of further incidences of child maltreatment" and, in regards to the father, "[t]he prognosis for change is poor, because it is unlikely that his IQ will ever improve." (Quotation marks omitted.) Moreover, "the Department's compliance with its rehabilitation and reunification duties as outlined in section 4041 does not constitute a discrete element requiring proof in termination proceedings, nor does the failure of the Department to comply with section 4041 preclude findings of parental unfitness." *In re Child of Heather W.*, 2018 ME 31, ¶ 11, 180 A.3d 661 (quotation marks omitted).

[¶6] The court therefore did not clearly err when it found that, based on the parents' own limitations and "their failure to make changes in their living environment and their lives that are necessary to keep [the child] safe," the parents were unwilling and unable to protect their child from jeopardy or

take responsibility for their child, and that these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's high needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *see also In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.

B.      Best Interest Determination

[¶7]    Both parents also challenge the court's determination that termination of their parental rights was in the child's best interest. They argue that this was an error and abuse of discretion because the child had voiced a desire to return to their care and that the child's behavior had deteriorated while he was in the custody of the Department. The court made specific findings regarding the child's misbehavior during his time in the custody of the Department and noted that the child "has expressed that he wants to return home to his parents." Despite these findings, the court ultimately determined that termination was in the child's best interest based on the child's "age, his . . . needs and the fact that he has been in DHHS custody for twenty months and needs stability and permanency." This determination is supported by the record and was not an abuse of discretion. *See In re Logan M.*, 2017 ME 23, ¶ 5, 155 A.3d 430.

8

The entry is:

Judgment affirmed.

---

Luann L. Calcagni, Esq., Plymouth, Massachusetts, for appellant father

Bradley P. Sica, Jr., Esq., Christopher S. Berryment, LLC, Mexico, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Farmington District Court docket number PC-2016-4
FOR CLERK REFERENCE ONLY