MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2019 ME 62
Docket:       Cum-18-422
Submitted
  On Briefs:  April 9, 2019
Decided:      April 30, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILDREN OF ANTHONY L.

PER CURIAM

[¶1]  Anthony L. appeals from a judgment of the District Court (Portland, *Woodman, J.*) terminating his parental rights to his children.  The father argues that the court erred by finding that he is unfit as a parent and abused its discretion by determining that termination of his parental rights is in the best interests of the children.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The court found the following facts, which are supported by competent evidence in the record.  In January 2018, the father shot and killed the mother in the kitchen of their family home.  The children, ages sixteen and eleven, witnessed their mother's body and their father standing in the room with a gun on the floor.  The children fled the house and the oldest child called 9-1-1.  The next day, the Department of Health and Human Services filed a child protection petition and a request for a preliminary protection order.  *See*

22 M.R.S. §§ 4032, 4034 (2018).  The court (*Eggert, J.*) granted the preliminary protection order, placing the children in the Department's custody.  The father was later arrested and remains incarcerated while awaiting trial on a charge of murdering the mother.

[¶3]  A contested jeopardy hearing was held in May 2018, following which the court issued an order finding jeopardy as to the father.  *See* 22 M.R.S. § 4035 (2018).  The jeopardy order included findings that "the father killed the mother" and that "[t]he evidence presented show[ed] the horrific psychological impact on the [children], . . . constitut[ing] a heinous and abhorrent action by their father, an aggravating factor."  *See* 22 M.R.S. § 4002(1-B)(A)(1) (2018).  Because the court found the existence of an aggravating factor, the court relieved the Department of its responsibility to provide reunification and rehabilitation services to the father.  *See* 22 M.R.S. § 4036(1)(G-2) (2018).

[¶4]  The Department petitioned to terminate the father's parental rights in June 2018.  *See* 22 M.R.S. § 4052 (2018).  The court (*Woodman, J.*) held a single-day hearing in September 2018, during which it took judicial notice of all prior court orders in the case and, by stipulation of the parties, took "judicial notice" of two reports of the guardian ad litem.[1]  Following the hearing, the

---

[1] Guardian ad litem reports are not properly the subject of judicial notice unless the reports were previously admitted by the *same judge* in an earlier proceeding, *see In re Caleb M.*, 2017 ME 66, ¶¶ 20,

court issued a judgment terminating the father's parental rights to the children. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (1-A)(A) (2018).

[¶5] The court's ultimate decision to terminate the father's parental rights was based on the following findings of fact, which the court found by clear and convincing evidence and which are supported by the record:

> [The father] is unable to protect the . . . children from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the children's needs. Specifically, the father is in jail awaiting trial on charges of murder of the mother of the minor children. The facts as described by Judge Eggert in the [jeopardy] [o]rder issued on May 24, 2018 are grotesque. On January 7, 2018, the children heard a noise in the home and ran to the kitchen. They saw their mother on the floor, dead, covered in blood. They also saw a gun on the floor, with only the father standing there. [The older child] escaped the home with [the younger child] without any shoes or jackets even though this happened in the middle of winter. They ran to a neighbor's home and were able to call 9-1-1. Father had previously made threats to kill mother which the [children] heard. . . . [T]he court found by a preponderance of the evidence that father killed mother. The [c]ourt concluded that the act had a horrific psychological impact on the boys, and constitutes a heinous and abhorrent action by their father which is an aggravating factor. Based on this finding,

---

23, 159 A.3d 345, and the concept of judicial notice "should not be referenced except in circumstances that truly constitute judicial notice." *Cabral v. L'Heureux*, 2017 ME 50, ¶ 11 & n.4, 157 A.3d 795. However, because the court may admit the evidence by agreement of the parties, *id.*, the court did not commit error by admitting the guardian ad litem's reports.

Although the father makes other arguments related to the guardian ad litem reports, these issues were not raised prior to this appeal. Because there is no obvious error in the court's consideration of the reports, we deem the father's other arguments waived, and, in any event, the father's arguments are not persuasive. *See In re Anthony R.*, 2010 ME 4, ¶¶ 8-9, 987 A.2d 532.

4

the Department . . . was relieved from the requirement to make reasonable efforts to reunify the children with the father.

Father has not seen the children since the day of the murder. They had initially been placed with paternal grandfather. However, due to the grandfather's continual attempts to undermine mother's family and unduly influence the children with regard to what occurred on the night their mother died, the children were removed and have been placed with maternal uncle . . . and family. The children are doing well there and wish to remain there. . . .

Father is in jail facing murder charges. If he is convicted he will likely spend decades in prison. The children have not seen him in nearly nine months and have no desire to see him or to have a relationship with him.

Father's heinous and abhorrent actions towards mother and children make him an unfit parent.

. . . .

The [c]ourt finds that the guardian *ad litem* made a thorough investigation of the case and advised the [c]ourt of his opinion that termination of father's parental rights was in the best interests of these children.

The father timely appealed the court's judgment. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Parental Unfitness

[¶6] The father first argues that the court erred by determining that he was unfit as a parent. "We review the court's factual findings on parental

unfitness for clear error," *In re Child of Everett S.*, 2018 ME 93, ¶ 3, 189 A.3d 240, and will affirm the court's findings if they are supported by competent evidence in the record, *In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430.

[¶7]  Title 22 provides the statutory grounds pursuant to which the court may find that a parent is unfit.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iv) (2018). Here, the court found that the father "is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs."  *Id.* § 4055(1)(B)(2)(b)(i).  The court also invoked the statutory "[r]ebuttable presumption" of unfitness:

> **1-A. Rebuttable presumption.**  The court may presume that the parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs if:
>
> **A.** The parent has acted toward a child in a manner that is heinous or abhorrent to society or has failed to protect a child in a manner that is heinous or abhorrent to society, without regard to the intent of the parent.
>
> . . . .

22 M.R.S. § 4055(1-A)(A).

[¶8]  We have explained that this "presumption" does not shift the burden of proof to the parent to disprove parental unfitness.  *In re Addilyn R.,*

2017 ME 236, ¶ 4, 176 A.3d 184; *In re Evelyn A.*, 2017 ME 182, ¶¶ 31-32, 169 A.3d 914. Instead, it operates by "delineat[ing] the specific facts and circumstances upon which a court may—but need not—reach an ultimate finding of parental unfitness." *In re Evelyn A.*, 2017 ME 182, ¶ 31, 169 A.3d 914. The court may use the statutory presumption as "the pathway to an inference," but it must "place[] the burden of proof entirely on the Department and [may] not require or expect the [parent] to meet any evidentiary burden." *In re Addilyn R.*, 2017 ME 236, ¶ 4, 176 A.3d 184. The court "may reach an ultimate finding of unfitness only if the evidence in its entirety supports that finding by clear and convincing evidence." *In re Evelyn A.*, 2017 ME 182, ¶ 31, 169 A.3d 914.

[¶9] In this case, the court found parental unfitness both directly and based on an inference of unfitness. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (1-A)(A). In reaching this determination, the court relied upon three main findings: (1) that the father killed the mother,[2] (2) that the father has been

---

[2] The father argues that actions taken toward the mother do not implicate the statutory presumption of unfitness because they were not taken toward the children. However, the statutory presumption does not require actual physical action taken toward the children. As we explained in *In re J.H.*, an action such as killing the mother in the children's presence can be considered to be conduct toward the children "because emotional harm can create jeopardy in the same way as physical harm." 2015 ME 10, ¶¶ 6-7, 108 A.3d 1271; *see also* 22 M.R.S. § 4002(6)(A), (10)(B) (2018) (defining "jeopardy" as including "[s]erious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including

incarcerated for nine months and will be incarcerated for a long period if convicted,[3] and (3) that the father's actions had a "horrific psychological impact on the [children]."  Each of these findings is supported by competent evidence in the record.[4]

---

severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior").

[3] We note that "a parent's long-term incarceration, standing alone, does not provide grounds for the termination of parental rights."  *In re Asanah S.*, 2018 ME 12, ¶ 5, 177 A.3d 1273 (alteration omitted) (quotation marks omitted).  However, the court did not rely solely upon the father's incarceration; rather, the court considered the father's incarceration as one factor leading to the overall determination that the father was unfit as a parent. *See In re Child of Charles V.*, 2018 ME 143, ¶ 8, 195 A.3d 809.

[4] The father contends that the court erred by considering the factual findings contained within the jeopardy order issued by a different judge who presided over that stage of the proceedings and that without such findings, the court could not have found him to be an unfit parent.  This contention is incorrect.  As we have stated on multiple occasions,

> [t]he authority of the trial judge to take judicial notice of matters of record is distinct from the authority of a single judge to consider *evidence presented* in a previous stage of a child protective proceeding . . . .
>
> When a court enters a judgment containing findings of fact and conclusions of law, those findings become a matter of judicial record.  A judge may take judicial notice of any matter of record when that matter is relevant to the proceedings at hand.  Particularly in the context of child protective proceedings, where the entire procedure occurs as a unified proceeding, a trial judge may, at any stage of the proceeding, take judicial notice of the findings and conclusions contained in any prior judgments or orders.

*In re Scott S.*, 2001 ME 114, ¶¶ 12-13, 775 A.2d 1144 (footnote and citation omitted); *see also In re Children of Bradford W.*, 2019 ME 15, ¶ 7, --- A.3d ---.

In this case, the court stated in its judgment that it considered the *findings of fact* contained within the jeopardy order and specified that it subjected all facts and evidence it considered to the clear and convincing standard required at the termination of parental rights stage. *See In re Children of Bradford W.*, 2019 ME 15, ¶¶ 8-9, --- A.3d ---.

8

[¶10]   The father also argues that his killing of the mother cannot be considered "heinous and abhorrent" according to 22 M.R.S. § 4055(1-A)(A) or otherwise form the basis of his parental unfitness because he has yet to be convicted of murder.  But, as we have noted in regards to the similar language used to define an "aggravating factor" in 22 M.R.S. § 4002(1-B)(A)(1),[5] "it is not necessary for the court to have had before it an actual criminal conviction." *In re Jamara R.*, 2005 ME 45, ¶ 16, 870 A.2d 112, *partially overruled on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.  The language of section 4055(1-A)(A) requires only a finding that "[t]he parent has acted toward a child in a manner that is heinous or abhorrent to society"; it does not require a criminal conviction.  Had the Legislature intended that a conviction be required, it could have done so.  *C.f.* 22 M.R.S. § 4055(1-A)(B) (2018) (allowing for a presumption of unfitness when the child was the victim of certain crimes by the parent that "the parent has been *convicted* of" (emphasis added)).  Accordingly, it was not error for the court to determine by clear and

---

[5]   Title 22 M.R.S. § 4002(1-B)(A)(1) (2018) provides the definition for an "[a]ggravating factor" that a court may find at the jeopardy stage, which occurs when "[t]he parent has subjected any child for whom the parent was responsible to aggravated circumstances, including . . . treatment that is heinous or abhorrent to society."

convincing evidence that the father's killing of the mother in the presence of the children was heinous and abhorrent to society.

[¶11] Because the court's findings are supported by competent evidence in the record, the court did not err in determining that the father was unable or unwilling to protect the children from jeopardy within a time reasonably calculated to meet the children's needs or in inferring the same in accordance with the statutory presumption. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (1-A)(A); *In re Child of Everett S.*, 2018 ME 93, ¶ 3, 189 A.3d 240.

B.    Best Interests

[¶12]    The father also challenges the court's determination that termination of his parental rights is in the best interests of the children because the court "failed to make explicit findings addressing all the statutory factors to be considered."    "We review the court's factual findings related to the child[ren]'s best interest[s] for clear error, and its ultimate conclusion regarding the child[ren]'s best interest[s] for an abuse of discretion . . . ." *In re Children of Christopher S.*, 2019 ME 31, ¶ 7, --- A.3d --- (quotation marks omitted).

[¶13] The court's findings "must be sufficient to inform the parties of the basis for the termination decision and to allow for meaningful review on

appeal." *In re Aubrey R.*, 2017 ME 37, ¶ 2, 157 A.3d 212 (quotation marks omitted). When a court recites the facts relevant to its decision, even if "the factual findings could have been more explicit," the judgment is sufficient as long as it "inform[s] the parties and this Court of the basis of the court's decision." *In re David G.*, 659 A.2d 859, 862 (Me. 1995). Moreover, "[a]lthough a finding of parental unfitness and a finding of best interests of the child[ren] are two separate elements, the court may consider the findings of parental unfitness as relevant to best interests. For example, the parent's inability to protect the child[ren] from jeopardy is relevant to the child[ren]'s best interests." *In re Ashley A.*, 679 A.2d 86, 89 (Me. 1996).

[¶14] Here, the court determined that the children were doing well in a placement with their maternal uncle and his family, that the children do not wish to have any contact or relationship with the father, that the father and his family attempted to influence the children in regard to the criminal case, and that the guardian ad litem believes termination is in the children's best interests. Based on these findings, all of which are supported by competent evidence in the record, the court did not abuse its discretion in determining that termination of the father's parental rights is in the best interests of the children. *See In re Children of Christopher S.*, 2019 ME 31, ¶ 7, --- A.3d ---.

The entry is:

Judgment affirmed.

---

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2018-2
FOR CLERK REFERENCE ONLY